# FIRST NATIONAL BANK OF OTTAWA *v.* CONVERSE.

## ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 176. Argued January 25, 1906.—Decided February 19, 1906.

A Minnesota manufacturing corporation having failed, the creditors, a national bank among them, organized a new corporation under the laws of Minnesota for the purchase of the capital stock, evidences of indebtedness and assets of the corporation and for the manufacture of the same articles that it had manufactured. The bank and other creditors exchanged their claims against the old corporation for stock in the new corporation. After the incorporation, and prior to the failure, of the new corporation the laws of Minnesota imposing double liability on stockholders of certain corporations were amended and a new method of procedure for enforcing them was provided. Stockholders of corporations organized exclusively for manufacturing purposes are not subject to double liability. Proceedings having been taken under the statute to enforce the double liability of the stockholders, a receiver was appointed, an assessment determined, and a judgment for the *pro rata* amount obtained against the national bank, which denied liability, claiming that the corporation was organized for manufacturing purposes only, and therefore the stockholders were exempt from double liability; that the provisions in the statute providing for enforcing double liability were unconstitutional under the impairment of obligation clause of the Federal Constitution; and that the original taking of the stock by it as a national bank was *ultra vires.* *Held,* that:

Under the construction given by the Supreme Court of Minnesota to its articles of association the corporation was organized to engage in a purely speculative business in buying and selling the stock and assets of another corporation with power, but without any obligation, to engage independently in a manufacturing business and did not fall within the class of corporations whose stockholders were exempted from liability.

A national bank has no power to engage in or promote a purely speculative business or to take stock in a corporation organized for that purpose, nor can the power to take such stock as a means of protecting itself from loss on preëxisting indebtedness be inferred from the right to accept it as security for a present loan.

Notwithstanding its subscription, a national bank, taking stock in a corporation organized for purely speculative purposes, may plead its want of authority so to do as a defense to the claim of a receiver of such corporation for the double liability imposed by a state statute on the stockholders thereof.

For brevity, the plaintiff in error will be hereafter referred to as the bank and the defendant in error as the receiver.

The receiver commenced this action against the bank in the Circuit Court of the United States for the Northern District of Illinois. The object of the action was to recover from the bank, as the owner of 274 shares of preferred stock in the Minnesota Thresher Manufacturing Company, the amount of an assessment of eighteen dollars per share, levied upon said stock for the payment of the debts of the thresher company. A demurrer to an amended declaration having been overruled, and the bank electing not to plead further, judgment was entered for the receiver, and, on account of constitutional questions raised by the demurrer, the case was brought directly to this court.

The averments of the amended declaration may be summarized as follows: In May, 1884, the Northwestern Manufacturing and Car Company was a corporation, engaged in the manufacturing business at Stillwater, Minnesota. At the date mentioned the car company owed a large amount of debt, which it was unable to pay, among which was a sum due to the bank for money lent. In that month a receiver was appointed for the car company by a court of the State of Minnesota having jurisdiction. Some time afterwards, in November, 1884, the bank with other creditors, and some of the stockholders of the car company, organized under the laws of Minnesota a new corporation, styled the Minnesota Thresher Manufacturing Company. The articles of incorporation of the new company provided "that the objects for which said corporation was formed were the purchase of the capital stock, evidences of indebtedness issued by and the assets of the Northwestern Manufacturing and Car Company, a corporation existing under the laws of the State of Minnesota, or any portion of said capital stock, evidences of indebtedness or assets, and the manufacture and sale of steam engines, of all kinds, farm implements and machinery of all kinds, and the manufacture and

sale of all articles, implements and machinery of which wood and iron or either of them form the principal component parts, and the manufacture of the materials therein used."

The thresher company exchanged its preferred stock at par for the debts of the car company and issued common stock in exchange for the preferred stock of the car company. Subsequently at a judicial sale the new company acquired all the assets of the car company and paid for the same with the claims which it had acquired for issuing its common stock as above stated. The stock held by the bank upon which the assessment was sought to be enforced was alleged to have been acquired by the bank in the manner above stated, that is, by an exchange of its claim against the car company for the preferred stock of the new corporation. The declaration alleged that at the time of the acquisition of the stock by the bank, as above stated, under the constitution and laws of Minnesota, there was a double liability imposed upon the stockholders to pay the debts of the corporation in the event of its insolvency.

After the organization of the thresher company and the purchase of the assets of the car company, as above stated, the thresher company carried on the manufacturing business authorized by its charter. In 1901 it became insolvent. A creditor having sued and obtained judgment, and an execution having been issued and returned unsatisfied, the creditor procured, under the provisions of chapter 76 of the General Statutes of Minnesota and the amendments thereto, the appointment of a receiver of the property of the thresher company, who duly qualified and entered upon the discharge of his duties. In the proceeding in which the receiver was appointed creditors exhibited claims and demands against the thresher company, aggregating $443,752.17, but no property or assets of the corporation existed available to pay this indebtedness or any portion thereof.

Thereafter, upon petition of the receiver, pursuant to the provisions of chapter 272 of the General Laws of Minnesota

for 1899, copied in the margin,[1] steps were taken to provide a fund for the payment of the debts of the corporation, by enforcing contribution from its stockholders upon the double liability alleged to result from the ownership of its stock. The bank did not appear in the proceeding.

---

[1] General Laws of Minnesota for 1899.

Chapter 272.

"An act to provide for the better enforcement of the liability of stockholders of corporations.

"SEC. 1. Whenever any corporation created or existing by or under the laws of the State of Minnesota, whose stockholders or any of them are liable to it or to its creditors, or for the benefit of its creditors, upon or on account of any liability for or upon or growing out of, or in respect to the stock or shares at any time held or owned by such stockholders, respectively, whether under or by virtue of the constitution and laws of said State of Minnesota, or any statute of said State, or otherwise, has heretofore made, or shall hereafter make an assignment for the benefit of its creditors under the insolvency laws of this State; or whenever a receiver for any such corporation has heretofore been or shall hereafter be appointed by any District Court of this State, whether under or pursuant to any of the provisions of chapter seventy-six (76) of the General Statutes of eighteen hundred and ninety-four (1894) of Minnesota and the acts amendatory thereof, or under or pursuant to any other statute of this State or under the general equity powers and practice of such court; the District Court appointing such receiver or having jurisdiction of the matter of said assignment may proceed as in this act provided.

"SEC. 2. Under the petition of the assignee or the receiver of any such corporation, or of any creditor of such corporation who has filed his claim in such assignment or receivership proceedings, the said District Court shall by order appoint a time for hearing not less than thirty (30) nor more than sixty (60) days from the time of filing said petition with the clerk of said court, and shall direct such notice of such hearing to be given by the party presenting said petition, by publication or otherwise, as the court in its discretion may deem proper; but if said petition be filed by a creditor, other than the assignee or receiver of said corporation, the court shall direct that notice of such hearing be personally served on such assignee or receiver.

"SEC. 3. At such hearing the court shall consider such proofs by affidavit or otherwise as may then be offered by the assignee or receiver, or by any creditor or officer or stockholder of said corporation who may appear in person or by attorney, as to the probable indebtedness of said corporation and the expenses of said assignment or receivership, and the probable amount of assets available for the payment of such indebtedness and ex-

After compliance with the requirements of the act of 1899 the court made an assessment of eighteen dollars upon each of the shares of the stock of the thresher company, and the receiver was authorized and directed, in the event of the failure

---

penses; and also as to what parties are or may be liable as stockholders of said corporation and the nature and extent of such liability. And if it appear to the satisfaction of the court that the ordinary assets of said corporation, or such amount as may be realized therefrom within a reasonable time, will probably be insufficient to pay and discharge in full and without delay its indebtedness and the expenses of such assignment or receivership, and that it is necessary or proper that resort be had to such liability of its stockholders: the said court shall thereupon by order direct and levy a ratable assessment upon all parties liable as stockholders or upon or on account of any stock or shares of said corporation, for such amount, proportion or percentage of the liability upon or on account of each share of said stock as the court in its discretion may deem proper (taking into account the probable solvency or insolvency of stockholders and the probable expenses of collecting the assessment); and shall direct the payment of the amount so assessed against each share of said stock to the assignee or receiver within such time thereafter as said court may specify in said order.

"SEC. 4. Said order shall direct the assignee or receiver to proceed to collect the amount so assessed against each share of said stock from the parties liable therefor; and shall direct and authorize said assignee or receiver, in case of the failure of any party liable upon or on account of any share or shares of said stock to so pay the amount so assessed against the same within the time specified in said order, to prosecute action against each and every such party so failing to pay the same, wherever such party may be found, whether in this State or elsewhere.

"SEC. 5. Said order and the assessment thereby levied shall be conclusive upon and against all parties liable upon or on account of any stock or shares of said corporation, whether appearing or represented at said hearing or having notice thereof or not, as to all matters relating to the amount of and the propriety of and necessity for the said assessment. This provision shall also apply to any subsequent assessment levied by said court as hereinafter provided.

"SEC. 6. It shall be the duty of such assignee or receiver to, and he may, immediately after the expiration of the time specified in said order for the payment of the amount to be assessed by the parties liable therefor, institute and maintain an action or actions against any and every party liable upon or on account of any share or shares of such stock who has failed to pay the amount so assessed against the same, for the amount for which such party is so liable. Said actions may be maintained against each stockholder, severally, in this State or in any other State or country where such stockholder, or any property subject to attachment, garnishment, or other process,

of a stockholder to pay, after due notice by mail, "to forthwith institute and prosecute such action or actions or other proceedings against such person, persons, corporation or party liable in any court having jurisdiction, whether in this State or elsewhere, which said receiver may deem necessary or proper for the recovery of the amount due from such person, persons, corporation or party under the terms of this order." After alleging the default of the bank to pay the assessment, the amended declaration prayed for a judgment against the bank for the sum of the assessment, that is, eighteen dollars per share on the 274 shares of stock of the thresher company, which stood on the books of that company in the name of the bank.

As stated at the outset, the bank demurred to the amended declaration, and, on the demurrer being overruled, stood upon the demurrer and judgment was entered against it as prayed for. The grounds upon which the amended declaration was demurred to were as follows:

"1. It does not state facts sufficient to constitute a cause of action against the defendant.

"2. It does not show that plaintiff has legal capacity to institute and maintain the present action.

"3. It shows that said supposed Laws of Minnesota for 1899 are in contravention of clause 1 of section 10 of article I of the Constitution of the United States.

"4. It shows that said supposed Laws of Minnesota for

---

in an action against such stockholder, may be found. But if said assignee or receiver shall in good faith believe any stockholder so liable to be insolvent, or that the expense of prosecuting such action against such stockholder will be so great that it will be of disadvantage to the estate and the interest of creditors to prosecute the same, said assignee or receiver shall so report to said court; and shall not be required to institute or prosecute any such action unless specifically directed so to do by said court. And in such case said court shall not require said receiver to institute or maintain such action unless said court shall have reasonable cause to believe that the result of such action will be of advantage to the estate and creditors of said corporation; except as hereinafter provided."

1899 are in contravention of the Fourteenth Amendment of the Constitution of the United States.

"5. It shows that said supposed Laws of Minnesota for 1899, being 'An act to provide for the better enforcement of the liability of stockholders of corporations,' are in contravention of the Constitution of the United States.

"6. It shows that said supposed Laws of Minnesota for 1899 unjustly discriminate against non-resident stockholders and are such as will not be enforced in this jurisdiction.

"7. It shows that the supposed order of the court levied an assessment on stockholders that is excessive and beyond reason.

"8. It does not show that the supposed corporate indebtedness is contractual or that it has been judicially determined as against this defendant.

"9. It does not show that all the necessary steps prescribed by the supposed laws of Minnesota have been taken.

"10. It shows, as a basis of liability, supposed acts of the defendant which are *ultra vires* and void under the national bank act.

"11. It states conclusions of the pleader instead of facts.

"12. It does not allege a case within the jurisdiction of this court.

"13. It is, in other respects, uncertain, informal and insufficient."

*Mr. Lester H. Strawn* and *Mr. Lawrence Arnold Tanzer* for plaintiff in error:

On the question of the double liability of the stockholders in the thresher company:

When it appears from the articles of association that the real and only purpose of the organization of the corporation is the carrying on of a manufacturing or mechanical business, and such other business as may be incidental thereto, the shareholders are exempt from the constitutional and statutory additional liability. *Hastings Malting Co.* v. *Iron Range Brewing*

*Co.*, 65 Minnesota, 28; *Cowling* v. *Zenith Iron Co.*, 65 Minnesota, 263; *Cuyler* v. *City Power Co.*, 74 Minnesota, 22; *Senour Mfg. Co.* v. *Church Paint Co.*, 81 Minnesota, 294.

The acts of the bank set out as a basis of liability were *ultra vires* and void. The power of national banks to deal in stocks is not conferred and therefore prohibited. *First National Bank* v. *Hawkins*, 174 U. S. 364; *California National Bank* v. *Kennedy*, 167 U. S. 362.

Even though the bank might take stock to secure a debt, it could not lawfully enter into a scheme to create a corporation in the hope that the corporation would earn money enough to pay the debt to the bank.

United States courts will permit a national bank to plead *ultra vires*. *First National Bank* v. *Hawkins*, 174 U. S. 364; *California National Bank* v. *Kennedy*, 167 U. S. 362; *Ward* v. *Joslin*, 186 U. S. 142; *Building Association* v. *Home Savings Bank*, 181 Illinois, 35; *Nassau Bank* v. *Jones*, 95 N. Y. 115; *Jemison* v. *Citizens' Savings Bank*, 122 N. Y. 135.

*Mr. C. A. Severance*, with whom *Mr. Frank B. Kellogg*, *Mr. Robert E. Olds* and *Mr. J. H. Chandler* were on the brief, for defendant in error:

The acquisition of the stock by the plaintiff in error was not *ultra vires* and it is liable to the same extent as any other stockholder.

This transaction presented none of the elements of an investment or a speculation on the part of the creditors of the old company. It was simply an attempt to realize the most that they could upon their claims by taking preferred stock in the new company organized to liquidate the business. It was the logical and necessary outcome of a legitimate banking transaction.

The decisions of this court settle the question of *ultra vires* beyond all controversy. *First National Bank* v. *National Exchange Bank*, 92 U. S. 122. See also *National Bank* v. *Case*, 99 U. S. 628. *California Bank* v. *Kennedy*, 167 U. S.

362, distinguished; *Concord First National Bank* v. *Hawkins*, 174 U. S. 364.

In the recent well considered case, *Tourtelot* v. *Whithead*, 84 N. W. Rep. (N. Dak.) 8, it was held, after a careful review of the authorities, that a national bank had power to exchange notes held by it against a milling corporation, for preferred stock of that corporation issued for the purpose of raising additional capital, to be used to relieve the corporation from financial embarrassment.

It is always held to be within the powers of an ordinary mercantile corporation, which finds itself involved in debt so as to make the course reasonably advisable, to exchange all of its property for stock in a new corporation organized to take over and carry on the business. *Treadwell* v. *Salisbury Mfg. Co.* 7 Gray (Mass.), 393; *Hodges* v. *New England Screw Co.*, 1 R. I. 312; *Holmes & Griggs Mfg. Co.* v. *Holmes & Wessell Metal Co.*, 127 N. Y. 252; *Miner's Ditch Co.* v. *Zellerbach*, 37 California, 543.

So also may a trading corporation, not specifically authorized by law to hold stock in another corporation, take the same in payment of a debt. *Hodges* v. *New Eng. Screw Co.*, *supra*; *Howe* v. *Boston Carpet Co.*, 16 Gray (Mass.), 493.

The Supreme Court of Minnesota has not only held that the stockholder is a surety for the corporation and therefore bound for anything for which the corporation is bound, but has also held that a judgment against a corporation is of itself sufficient evidence of the claim of the judgment creditor against the stockholder. *Frost* v. *St. Paul Banking & Inv. Co.*, 57 Minnesota, 331.

Mr. Justice White, after making the foregoing statement, delivered the opinion of the court.

The questions principally discussed at bar relate to the alleged repugnancy to the Constitution of the United States of the Minnesota law of 1899, by virtue of which the receiver

asserted his power and authority to sue in a court of another jurisdiction than that of Minnesota to enforce the assessment made by the court of Minnesota on the stockholders of the thresher company.   But antecedent to that question we must consider and dispose of the propositions arising from the tenth ground of the demurrer, that is, that under the averments of the bill there was no liability on the bank, as the facts alleged from which it is asserted the liability arose showed that the act of the bank in subscribing to the stock was *ultra vires* and prohibited by the provisions of the national banking act.   We say this is antecedent because, if from the averments of the declaration, aside from the validity or invalidity of the act of 1899, there could be no liability on the bank to pay the assessment, it will be unnecessary to consider whether the Minnesota statute added such conditions to the obligation resulting from the stock subscription at the time it was made as to cause the statute to be repugnant to the contract or any other clause of the Constitution of the United States.

At the time the bank took the stock in the thresher company it was provided in section 3 of article X of the constitution of Minnesota as follows: "Each stockholder in any corporation (except those organized for the purpose of carrying on any kind of manufacturing or mechanical business) shall be liable to the amount of stock held or owned by him."

If the thresher company was organized solely for manufacturing purposes, it is of course apparent that under this provision of the Minnesota constitution the stockholders of the company would not be liable for its debts. *Senour Mfg. Co.* v. *Church Paint & Mfg. Co.*, 81 Minnesota, 294.   It has, however, been decided by the Supreme Court of Minnesota that unless it unquestionably appears that a Minnesota corporation claiming to be a manufacturing corporation was organized for the exclusive purpose of engaging in manufacturing and such incidental business as might be reasonably necessary for effecting that purpose, the exception in the Minnesota constitution to which reference has been made would not apply,

and the double liability would result. *State* v. *Minnesota Thresher Co.*, 40 Minnesota, 213; *Merchants' Nat. Bank* v. *Thresher Mfg. Co.*, 90 Minnesota, 144. These cases, it is to be observed, referred to the very act of incorporation upon which the liability of the bank, if at all, must rest. It clearly appears, from the comments of the Supreme Court of Minnesota upon the charter, that in the articles of association the thresher company was declared to be organized under the law of Minnesota relating to manufacturing corporations as a class exempt from double liability, and that the motives of the incorporators were to obtain immunity from the double liability. The court, however, held that the mere law under which the corporation was organized, and the motive therefor, would not suffice to bring the incorporators within the control of the exemption accorded by the constitutional provision, if from the articles of association it did not clearly appear that the corporation was confined solely to a manufacturing business and its incidents. The doctrine of the court was thus clearly stated (90 Minnesota, 147):

"It is immaterial that the corporation was organized under the statute providing for organizing manufacturing corporations or what the actual intention of the incorporators was, or that the corporation in fact carried on only a manufacturing business, but its articles of incorporation are the sole criterion as to such intention and the purposes for which the corporation was organized; and, unless it fairly appears therefrom that it was organized for the exclusive purpose of engaging in manufacturing and such incidental business as may be reasonably necessary for effectuating the purpose of its organization, its stockholders are not within the exception to the general rule of constitutional liability of stockholders for the debts of their corporation."

And further along in the opinion the declaration was reiterated (p. 148) that the intention of the corporators could not be ascertained by reference to matters not appearing on the face of the articles of association, and that the articles were the

sole criterion as to the purpose for which a corporation was formed, "that is, for ascertaining the intention of the associates." Applying this rule to the articles of association of the thresher company, the court found that the acquisition of the stock, etc., of the car company was a business independently to be engaged in and was not incidental to that of manufacturing, and, hence, that the corporation was not within the exception embodied in the constitutional provision imposing a double liability upon stockholders.

Now, the exclusive and only ground upon which the Supreme Court of Minnesota, in construing the articles of association of the thresher company, held that the articles embodied a distinct business from that of manufacturing, is plainly made manifest by the opinions expressed by the court in the two cases to which we have referred. In the earlier case the court said (40 Minnesota, 223):

"It is clear, therefore, to our minds that, under the act of 1873, a corporation can only be organized for carrying on an exclusively manufacturing or mechanical business, which, of course, includes anything that is properly incidental to or necessarily connected with such business. A corporation organized to carry on manufacturing and also some other lawful, but independent, business, belongs to the class authorized by title 2, c. 34 (sections 109–119).

"With this construction of the law in mind, it is not difficult, on examination of respondent's articles of association, to determine to what class it belongs. One of the declared objects of its formation is to purchase the capital stock and evidences of indebtedness of the car company, a business in nowise incident to or properly connected with that of manufacturing. The contention of counsel to the contrary cannot be seriously entertained for a moment. If a manufacturing corporation desires to buy the plant of another corporation formerly engaged in the same business, that is legitimate; and if, in order to get it, it becomes necessary to buy with it some other property, not needed for nor connected with the manufacturing

business, this also would be permissible, if done as incidental to the main purpose of securing the plant; but no such reason or excuse existed for buying the stock and indebtedness of the car company. Indeed, it would be difficult to imagine anything more foreign to or inconsistent with a legitimate manufacturing business than for a corporation to invest all its capital in the stock and indebtedness of another and insolvent corporation. Under title 2, a corporation can be organized to carry on any lawful business, and, if parties desire to deal in such speculative property, they can do so under that title; but not under the act of 1873, even by connecting it with manufacturing. Our conclusion, therefore, is that respondent is a corporation of the class authorized by title 2. That is what the corporators themselves have characterized it by their statement of the objects of its formation."

In the latter case, after restating the rule that the face of the articles of association was the sole criterion as to the purpose for which the corporation was formed, the court said (90 Minnesota, 148):

"Now, taking the articles in question by the four corners, and reading them in the light of the rule we have stated, without resorting to technicalities, does it fairly appear therefrom that the corporation was organized for the exclusive purpose of engaging in manufacturing and business incidental thereto and reasonably necessary for carrying into effect such purpose? We answer the question in the negative. There are two general purposes for which the corporation was organized as declared by the articles—one the purchase of the capital stock, evidence of indebtedness, and assets of an existing corporation; and the other the manufacture and sale of all articles, implements, and machinery made of wood and iron, or either of them, and the manufacture of the materials therein used. The first purpose does not appear to be a necessary incident to the second one. On the contrary, the corporation was authorized to buy and sell the stock, choses in action, and assets of the Northwestern Manufacturing & Car Company mentioned in the

articles, without ever engaging in the business of manufacturing. The first purpose appears to be independent of the second one, for the power to buy necessarily includes the incidental power to use, collect, deal with, or sell the stock and assets of the then existing corporation. Nor does it fairly appear, expressly or by necessary implication, from the language of these articles, that such stock and assets were to be purchased only as a necessary incident to the declared purpose of manufacturing all articles which are made of wood and iron, or either of them."

Accepting this construction given by the Supreme Court of Minnesota to the articles of association by which alone the incorporators under those articles can be taken out of the exemption accorded by the constitution of Minnesota, it follows that the thresher company was organized to embark in the purely speculative business of buying and selling the stock and assets of an existing and insolvent corporation, with power, but without the obligation, to engage as an independent enterprise in a manufacturing business.

Now, the limitations upon the powers of national banks were clearly pointed out in *California National Bank* v. *Kennedy*, 167 U. S. 362, where it was said (p. 366):

"It is settled that the United States statutes relative to national banks constitute the measure of the authority of such corporations, and that they cannot rightfully exercise any powers except those expressly granted, or which are incidental to carrying on the business for which they are established. *Logan County Bank* v. *Townsend*, 139 U. S. 67, 73. No express power to acquire the stock of another corporation is conferred upon a national bank, but it has been held that, as incidental to the power to loan money on personal security, a bank may in the usual course of doing such business accept stock of another corporation as collateral, and by the enforcement of its rights as pledgee it may become the owner of the collateral and be subject to liability as other stockholders. *National Bank* v. *Case*, 99 U. S. 628. So, also, a national bank may be con-

ceded to possess the incidental power of accepting in good faith stock of another corporation as security for a previous indebtedness. It is clear, however, that a national bank does not possess the power to deal in stocks. The prohibition is implied from the failure to grant the power. *First National Bank* v. *National Exchange Bank*, 92 U. S. 128."

As no authority, express or implied, has ever been conferred by the statutes of the United States upon a national bank to engage in or promote a purely speculative business or adventure, accepting the view of the articles of association by which the bank was denied the benefit of the exemption accorded by the constitution of Minnesota, it follows that the bank had no power to engage in such business by taking stock or otherwise. . The power of a national bank to engage in the character of business which the articles of association of the thresher company manifested, as defined by the Supreme Court of Minnesota, cannot be inferred to have been possessed by the bank as an incident of securing a present loan of money or as a means of protecting itself from loss upon a preëxisting indebtedness. To concede that a national bank has ordinarily the right to take stock in another corporation as collateral for a present loan or as security for a preëxisting debt, does not imply that because a national bank has lent money to a corporation it may become an organizer and take stock in a new and speculative venture; in other words, do the very thing which the previous decisions of this court have held cannot be done.

The speculative venture, therefore, which the bank undertook, as held by the Minnesota court, when it engaged in taking the stock in the thresher company being *ultra vires,* it follows, under the settled rules hitherto applied by this court, that the bank, despite the subscription, was entitled to plead its want of authority as a defense to the claim of the receiver. The doctrine on the subject was stated in *De la Vergne Co.* v. *German Savings Inst.*, 175 U. S. 40, where it was said (p. 59):

"The doctrine that no recovery can be had upon the contract is based upon the theory that it is for the interest of the public that corporations should not transcend the limits of their charters; that the property of stockholders should not be put to the risk of engagements which they did not undertake; that if the contract be prohibited by statute every one dealing with the corporation is bound to take notice of the restrictions in its charter, whether such charter be a private act or a general law under which corporations of this class are organized."

And, moreover, the authorities cited in the case just referred to conclusively establish that the principle which the case announced as to the power of a corporation to avail of the defense of *ultra vires* had been previously conclusively settled in this court. Indeed, the case arising on the record presents an obvious dilemma, which is this: If the construction of the articles of association given by the Supreme Court of the State of Minnesota, by which alone the double liability can be enforced, is accepted, then there was no liability because of *ultra vires*. If, on the other hand, we were to disregard the construction given by the Supreme Court of Minnesota to the articles of association we should be constrained to the conclusion that those articles but endowed the incorporators of the thresher company with the power to carry on a manufacturing business, and as a mere incident to acquire for the purposes of such business the property of the car company; and it would follow that there was no double liability, by force of the exception created in the constitution of Minnesota.

*The judgment must be reversed and the case remanded with directions to sustain the demurrer and enter judgment for the bank:*

MR. JUSTICE HARLAN concurs solely upon the authority of *California National Bank* v. *Kennedy* and the previous cases, announcing the doctrine which was adhered to and applied in that case.

MR. JUSTICE BREWER, dissenting.

I am unable to concur in the opinion and judgment in this case, and will briefly state the grounds of my dissent.

There is nothing in the organization of a national bank that puts it outside of the ordinary rules governing corporations, whether we consider the rights, obligations or the remedies in actions by or against it. Section 5136, Rev. Stat., prescribes the terms of its charter. It is authorized to do a banking business, and, like any other corporation, its powers are limited by the terms of the charter. A national bank may not engage in manufacturing, for its charter gives it no authority therefor. Neither can a manufacturing corporation engage in banking, and for a like reason. Neither one can engage in the business of buying and selling stocks, because authority therefor is not granted in the charter of either, but nevertheless each has authority to take stock in another corporation as security for or in payment of a debt. It was so long since decided by this court, *First National Bank* v. *National Exchange Bank*, 92 U. S. 122, 126, 127, 128, in which the question presented, as stated in the opinion of the court, announced by Mr. Chief Justice Waite, was:

"Whether a national bank, organized under the national banking act, may, in a fair and *bona fide* compromise of a contested claim against it growing out of a legitimate banking transaction, pay a larger sum than would have been exacted in satisfaction of the demand, so as to obtain by the arrangement a transfer of certain stocks in railroad and other corporations; it being honestly believed at the time, that, by turning the stocks into money under more favorable circumstances than then existed, a loss, which would otherwise accrue from the transaction, might be averted or diminished."

And answering that question in the affirmative, it was said:

"Its own obligations must be met, and debts due to it collected or secured. The power to adopt reasonable and appropriate measures for these purposes is an incident to the

power to incur the liability or become the creditor. Obligations may be assumed that result unfortunately. Loans or discounts may be made that cannot be met at maturity. Compromises to avoid or reduce losses are oftentimes the necessary results of this condition of things. These compromises come within the general scope of the powers committed to the board of directors and the officers and agents of the bank, and are submitted to their judgment and discretion, except to the extent that they are restrained by the charter or by-laws. Banks may do, in this behalf, whatever natural persons could do under like circumstances.

*    *    *    *    *    *    *    *

"Dealing in stocks is not expressly prohibited; but such a prohibition is implied from the failure to grant the power. In the honest exercise of the power to compromise a doubtful debt owing to a bank, it can hardly be doubted that stocks may be accepted in payment and satisfaction, with a view to their subsequent sale or conversion into money so as to make good or reduce an anticipated loss. Such a transaction would not amount to a dealing in stocks. It was, in effect, so decided in *Fleckner* v. *Bank of United States*, 8 Wheat. 351, where it was held that a prohibition against trading and dealing was nothing more than a prohibition against engaging in the ordinary business of buying and selling for profit, and did not include purchases resulting from ordinary banking transactions."

In *California Bank* v. *Kennedy*, 167 U. S. 362, the right to take stock of another corporation as collateral security was affirmed.

In the case before us the bank had a claim against the Northwestern Manufacturing and Car Company. This was in 1884. The car company was in financial trouble and had been placed in charge of a receiver appointed by a state court. The bank, in connection with other creditors of the car company, organized a new corporation—the Minnesota Thresher Manufacturing Company—to buy the entire plant of the car

company.  It was so purchased and the bank surrendered its
claim, taking in payment thereof preferred stock in the thresher
company.  The latter company carried on business until it
failed, and then proceedings were had by which the defendant
in error was appointed receiver and an assessment made by
order of the court, which assessment is the basis of this action.
Now, in accordance with the decision of this court in 92 U. S.,
*supra,* the bank had a right to surrender its claim and take
stock in payment thereof.  It did so, and, so far as the record
shows, everything was done in good faith and in the belief that
the best interests of the bank would be promoted thereby.
Having thus become a stockholder in the thresher company it
was entitled to all the benefits and subject to all the liabilities
which attached to ownership of the stock.  The fact that the
arrangement antedated the organization of the thresher com-
pany is immaterial, for until the arrangement was carried into
effect the claim of the bank against the car company was un-
disturbed.  To hold that a national bank may take, in satis-
faction of a claim, stock in a corporation already existing, and
cannot agree to take in such satisfaction stock in a corporation
to be created, and which is afterwards created, and whose stock
is issued to it in payment of the claim, is to create a distinction
without a difference and to sacrifice substance to form.  The
transaction is precisely the same as though the thresher com-
pany had been fully organized and thereafter the bank sur-
rendered its claim against the car company for stock in the
thresher company, and that, as held in 92 U. S., is perfectly
legitimate.  It held that stock for nearly a score of years, its
right to so hold being, so far as the record shows, unchallenged
by the Government or any stockholders, and enjoying during
that time all the benefits and profits resulting from such hold-
ing.  Finally the thresher company became embarrassed.  Its
creditors proceeded against it, and then for the first time is it
discovered that the holding by the bank of stock in the thresher
company was unauthorized and illegal, and now it repudiates
its liabiltiy as stockholder and leaves the burden of the thresher

company's debts to be borne by the other stockholders. Certainly there is little in this to appeal to the sense of justice.

The bank was not, as suggested, investing in any merely speculative business. It was not accepting stock in a corporation organized for the business of buying and selling. It was no more engaged in a speculative transaction than if it had taken a piece of real estate in satisfaction of a debt, hoping that the time would come when the real estate would be worth as much or more than the debt. The object of the organization of the thresher company, as stated in its charter, was to purchase the plant of the Northwestern Manufacturing and Car Company—that is, to buy a single property which was then in the hands of the court and likely to be sacrificed in judicial proceedings. Clearly the creditors thought that by acquiring title and possession of the entire plant they could realize more than by a receiver's sale to outside parties; and at the same time, contemplating the possibilities of the future, they provided in the charter for the carrying on of a general manufacturing business. The scheme is clearly set forth in the following passage from the opinion of the Supreme Court of Minnesota, quoted in the opinion of this court:

"There are two general purposes for which the corporation was organized as declared by the articles—one the purchase of the capital stock, evidence of indebtedness, and assets of an existing corporation; and the other the manufacture and sale of all articles, implements, and machinery made of wood and iron, or either of them, and the manufacture of the materials therein used. The first purpose does not appear to be a necessary incident to the second one. On the contrary, the corporation was authorized to buy and sell the stock, choses in action and assets of the Northwestern Manufacturing and Car Company mentioned in the articles, without ever engaging in the business of manufacturing. The first purpose appears to be independent of the second one, for the power to buy necessarily includes the incidental power to use, collect, deal with, or sell the stock and assets of the then existing corporation.

Nor does it fairly appear, expressly or by necessary implication, from the language of these articles, that such stock and assets were to be purchased only as a necessary incident to the declared purpose of manufacturing all articles which are made of wood and iron, or either of them."

Clearly the thresher company was no speculative corporation, but an ordinary and legitimate business venture. Suppose the bank had been the only creditor, is it possible that it could not have taken the whole car company's plant in satisfaction of its claim, and then held it in the hopes of being able to realize fully on the property? And if it could do so, acting alone and for its single interest, what is there in the organization of a national bank which prevents it doing the like thing in conjunction with other creditors?

Of course, as held by the Supreme Court of Minnesota, unless the thresher company was organized solely for the purpose of carrying on a manufacturing business, its stockholders would, under section 3 of article X of the constitution of Minnesota, be subject to the double liability. For if a power to engage in manufacturing exempts stockholders from double liability, no matter what other business the corporation is chartered to carry on, every corporation organizing under the Minnesota statutes would include that among its charter powers. We ordinarily accept the construction by a state supreme court of its constitution and laws as conclusive. In this case the construction placed by the Supreme Court of Minnesota upon this clause in the constitution is so obviously right as to preclude the necessity of defense.

For these reasons, thus briefly stated, I am constrained to dissent from the opinion and judgment of the court, and am authorized to say that MR. JUSTICE BROWN concurs in this dissent.