HAL BROWN & CO., Inc., v. DILLARD et al.

(District Court, N. D. Texas, Amarillo Division.
October 16, 1926.)

No. 304.

1. Corporations ⬅29(2).

Attack on issuance of charter of foreign corporation, being collateral attack, is not defense to action by such corporation on written contract.

2. Commerce ⬅46.

Failure of foreign corporation to have permit to do business in Texas held no defense to action by it on written contract relating to interstate commerce.

3. Contracts ⬅10(4).

Contract for purchase of cotton and for delivery on certain date held mutual and not unilateral.

4. Corporations ⬅450.

That corporation, for few days after contracting for purchase of cotton, had outstanding liabilities greater than paid-in capital stock, contrary to statute, held no defense to action by it for breach of such contract.

5. Corporations ⬅447.

Contracts by corporations, not justified by charter and against prohibition of statutes of creating states, are "ultra vires."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Ultra Vires.]

6. Corporations ⬅487(1).

No action may be maintained by corporation on contract which is ultra vires, as being outside of object of its creation, as defined in charter and law of its organization.

At Law. Action by Hal Brown & Co., Incorporated, against J. A. Dillard and W. R. Fullingim. Judgment for plaintiff.

W. H. Bledsoe and C. C. Crenshaw, both of Lubbock, Tex., and George Janvier, of New Orleans, La., for plaintiff.

Bean & Klett, of Lubbock, Tex., for defendants.

ATWELL, District Judge. The plaintiff alleges a contract involving approximately 100,000 pounds of middling basis cotton, alleged to have been sold by the defendants to the plaintiff for delivery in November or December of 1923, at 21 cents per pound; that the cotton was not delivered in either of those months, and that on the last day of the last month the reasonable market price of cotton so sold and bought was 34.85 cents per pound. The plaintiff sues for the difference between 21 cents per pound and 34.85 cents per pound, calculating that the amount of its damage on that basis would be approximately $13,000, the amount alleged in the petition.

The legal defenses urged by the defendants include an attack upon the issuance of the charter, a suggestion that the plaintiff had no permit to do business in Texas, that the contract was unilateral, and that the statute of Louisiana provides that no corporation shall make contracts in excess of the amount that has been paid in on its capital stock.

[1-3] I rule each of the contentions against the defendants—the first, upon the ground that it is a collateral attack; the second, upon the ground that the contract relates to interstate commerce; the third, because the contract is clearly mutual; and fourth, because of the reasons hereinafter stated.

The last criticism is as interesting as it is difficult. The testimony clearly shows that it was a good-faith purchase of 200 bales of cotton. The plaintiff immediately sold the 200 bales of cotton to a foreign spinner, and was compelled, when the defendants made default, to deliver the same.

[4] The Louisiana statute provides, in substance, that when all of the capital stock of the corporation shall not have been paid, liability in excess of such portion as has been paid shall not be created. The testimony shows that by adding the liability under the contract sued upon to the liability for running the offices and for the necessary clerk hire, and probably for another contract in Texas, such aggregate would be in excess of the $12,500 paid in on the capital stock; not much in excess, but, slightly so. Within 60 days after the creation of the corporation, and within less than that time after making the instant contract, the entire capital stock was paid in.

One of the defendants testified that he said he would not comply with the contract. The two contracts are alike and are as follows:

"This contract is made and entered into this 31st day of July, 1923, by and between Hal Brown & Co., Incorporated, a Louisiana corporation, herein represented by its duly authorized agent, hereinafter called purchaser, and J. A. Dillard and W. P. Fullingim, partners, hereinafter called seller, witnesseth:

"I. Seller agrees to deliver to purchaser at Lorenzo, Tex., during the months of November and December, 1923, one hundred (100) bales of cotton, middling basis, 7/8 inch staple; weighing 50,000 lbs.

"II. Purchaser agrees to accept said cotton at Lorenzo, Tex., and to pay therefor by accepting and immediately paying drafts

drawn on purchaser at New Orleans with bills of lading for said cotton attached.

"III. Purchaser agrees to pay twenty-one cents (21¢) per pound for said cotton.

"IV. Twenty-one cents (21¢) per pound is the basis price agreed upon for the grade of cotton specified in this contract. It is understood that differences in grade shall be adjusted on the basis of the differences prevailing in the territory surrounding Lorenzo, Tex., at the time of delivery of each shipment.

"Thus done and signed on the day, month, and year first above written. Hal Brown & Company, Inc., by Sam S. Denman. Dillard & Fullingim, by W. P. Fullingim."

"State of Texas, County of Lubbock.

"Before me, the undersigned authority in and for Lubbock county, Texas, on this day personally appeared W. P. Fullingim, of the partnership of Dillard & Fullingim, who acknowledged that he signed the above contract for the purpose and consideration therein expressed.

"[Seal.]    C. E. Cooper, Notary Public."

[5] (a) Contracts that are made by corporations, that are not justified by the wording of the charter, and that are against prohibitions of the statutes of the creating states, are ultra vires.

[6] (b) A contract which is ultra vires, in the true sense, as being outside of the object of its creation, as defined in its charter and in the law of its organization, is void, and no action may be maintained thereon. Ottawa First National Bank v. Converse, 200 U. S. 425, 26 S. Ct. 306, 50 L. Ed. 537; De La Vergne Refrigerating Machine Company v. German Saving Institution, 175 U. S. 40, 20 S. Ct. 20, 44 L. Ed. 65; 14a C. J. 580; Central Transportation Co. v. Pullman, 139 U. S. 24, 11 S. Ct. 478, 35 L. Ed. 55; Pittsburgh, C. & St. L. Ry. Co. v. Keokuk & H. Bridge Co., 131 U. S. 371, 9 S. Ct. 770, 33 L. Ed. 157.

(c) If a corporation enters into a contract, in good faith, under which its liability is in excess of the amount permitted by the statute of its birth, and neither the state nor a stockholder take steps to cancel it, or to penalize the corporation, and when the statute does not make such a contract void, should a court, after the debtor has defaulted under such a contract, declare it void upon the suggestion of the debtor? The instant purchase gave the corporation 200 bales of cotton to offset its liability. These 200 bales it sold at once. Both transactions were with solvent, reputable parties.

When a contract is not malum in se, when a contract is not vicious, why should a court declare it void, if it is within the corporate scope of the maker, and comes unmistakably within the purposes of the corporation? Circuit Judge Sanborn, in the case of H. Scherer & Co. v. Everest, 168 F. 822, 94 C. C. A. 346, speaking on this point, said:

"The statutes of Iowa in effect declare that the limit of the indebtedness of this corporation should be $8,000. But they did not provide that notes or contracts issued by the corporation which created an indebtedness beyond the limit thus prescribed should be void, and it is not the province of the courts to impose a penalty for the violation of a statute in which there is no moral turpitude or breach of public policy where the law fails to do so. In such a case the remedy for the violation is not the destruction of the contracts or of the property of those who have purchased them, but it is the ouster and dissolution of the corporation at the suit of the state."

Judge Sanborn cites many authorities in support of the position. See, also, Bank v. Harrison, 57 Mo. 503; Kirven v. Virginia-Carolina Chemical Co. (C. C. A. 4th) 145 F. 295, holding contract good, but suspending remedy, because to do otherwise is to encourage individuals to repudiate obligations of honest contracts; Ex parte Castro, 273 S. W. 795, on Texas divorce statute, which denies right to marry within year, yet fixes no penalty for doing so; Grand Valley v. Zumbrum (C. C. A.) 272 F. 943. Read, also, Paragon Oil Syndicate v. Rhoades Drilling Co. (Tex. Com. App.) 277 S. W. 1036; Fechner v. A. H. Belo & Co. (Tex. Civ. App.) 283 S. W. 926; Hennesy v. Automobile Owners' Ins. Ass'n (Tex. Com. App.) 282 S. W. 791.

It will not do to confuse this case with the well-known and necessary safeguards which prevent corporations from doing things that are not permitted under the charter or under the statute. The plaintiff corporation was created to buy and sell cotton. It was created to do exactly what it did do. It merely, for a few days, had outstanding liabilities that were slightly greater than the portion of the capital stock which had been paid in. After the capital stock was paid in, it had almost unlimited authority in the same direction. It would be chasing a shadow, rather than embracing the substance, to allow a repudiation by the defendants of a contract so solemnly made.

I am not questioning the soundness of the rule that the public is interested in feeling that a corporation has not transcended its

granted powers, nor do I overlook the interest of the stockholders that the capital shall not be subjected to risks not contemplated by the charter, nor the demand that one who does business with a corporation must have his eyes open to its charter limitations.

There is a large public policy in the maintenance of the sanctity of a contract which is recognized as being clean. I hold the contract was not void.