## ENID BANK & TRUST CO. et al. v. YANDELL et al.

No. 25097. March 3, 1936.

Rehearing Denied April 21, 1936.

McKeever, Elam, Stewart & MeKeever, for plaintiffs in error.

Harry C. Kirkendall, for defendants in error.

PER CURIAM. For convenience, the parties will be referred to here as they appeared below.

The petition in this case was filed January 9, 1932. Plaintiffs were depositors in the Enid Bank & Trust Company, one of the defendants in this case. Joseph H. Yandell acted for himself and wife in all the transactions involved in this action. Upon November 21, 1930, O. J. Fleming, president of the Enid Bank & Trust Company, offered to sell plaintiffs 6½ per cent. preferred stock of the Oklahoma Natural Gas Corporation for $95 per share. As a part of the offer, it was stated that the bank would be back of said stock, as the bank would agree to repurchase said stock at any interest-paying date.

Plaintiffs accepted said offer and agreed to buy five shares. On November 25, 1930, delivery of stock was made, the stock was paid for, and the agreement to repurchase was executed. The agreement covering the sale and repurchase was in the following words and figures:

"Ed Fleming, President, Vice.
"J. A. Murphy, Trust Officer.
"C. R. Story, Cashier.
"W. T. Haury, Asst. Cashier.
"Martin H. Miller, Asst. Cashier.
"Winifred Major, Asst. Cashier.
"O. J. Fleming, President.

"The Enid Bank & Trust Company
"Capital and Surplus $250,000.00
"Enid, Oklahoma

"November 25th, 1930.

"Agreement.
"This Agreement is to this Effect:

"The Enid Bank and Trust Company, Enid, Oklahoma, have sold to Joseph H. Yandell and Olive F. Yandell, Five (5) Shares of Oklahoma Natural Gas Corporation Stock, Certificate No. SP-012679, at the price of Ninety-five ($95) Dollars per share.

"It is hereby agreed that the Enid Bank and Trust Company, will repurchase the above-described stock at any interest-paying date, should Joseph H. and Olive F. Yandell desire to sell such stock.

"Enid Bank and Trust Company,
"By O. J. Fleming, President."
"OJF/Mss

On September 22, 1931, plaintiffs, through Joseph H. Yandell, personally notified the Enid Bank & Trust Company that they desired to resell to said bank the Oklahoma Natural Gas Corporation stock theretofore

purchased from the bank on the next interest-paying date, which was November 1, 1931. The bank failed to repurchase at the next interest-paying date, although tender of the stock was made at that time.

At the time of suit, the other defendants in this case had purchased all the assets of the Enid Bank & Trust Company and assumed all its liabilities, and for that reason they were also made defendants in this case.

In plaintiffs' petition they make a tender back to said bank of said stock and ask for judgment for the amount paid therefor with interest from November 1, 1931.

A joint answer for all defendants was filed. In substance, the answer is a general denial; a special denial that the transaction was had in the ordinary and general course of business; special denial that the transaction was within the scope of the banking and trust powers of the Enid Bank & Trust Company; an admission that the defendants other than the Enid Bank & Trust Company had purchased the assets of said bank; an admission of the execution of the agreement above to repurchase, but a special denial that O. J. Fleming, as president of the Enid Bank & Trust Company, had any authority, express or implied, to make such a contract on behalf of the bank; a special denial that the Enid Bank & Trust Company knew that such a contract had been made; a special denial that the contract to repurchase was a contract of the Enid Bank & Trust Company, and a denial that any liability was created against the Enid Bank & Trust Company by virtue of such agreement. Plaintiffs replied by way of a general denial.

On April 8, 1933, a jury was waived and the case was tried to the court. At the conclusion of all the evidence offered by plaintiffs, defendants demurred. The demurrer was overruled. The defendants elected to stand on their demurrer and judgment was rendered for plaintiffs against defendants for $475, the original purchase price of the stock, with interest at 6 per cent. from November 1, 1931. A motion for a new trial was filed within the statutory time, was overruled on April 17, 1933, and the case was then lodged in this court within the time required by law for review.

Plaintiffs in error present several grounds for reversal, but they all can be summarized in the general proposition that the Enid Bank & Trust Company had no authority under the laws and under its charter to

enter into the transaction here complained of, and even if the bank had such authority, O. J. Fleming, as president, was not shown to have been authorized to so obligate the bank, and that the transaction as carried on was done and had without the knowledge of the board of directors or of the bank, and therefore the contract sued on was not a contract of the Enid Bank & Trust Company, and no liability against the bank was created by virtue thereof. All of these contentions might be grouped in the statement that the contract sued on was ultra vires the bank, and, even if not, the president was not shown to have any authority to execute such a contract for the bank.

These questions were presented in the trial by way of demurrer to the petition, objection to the introduction of any evidence, objection to the introduction of certain evidence, and demurrer to the plaintiffs' evidence. It should be borne in mind that the defendants stood on their demurrer to plaintiffs' evidence and presented no evidence by way of defense. Hence, the case must be determined on the pleadings and on the evidence offered by plaintiffs.

While plaintiffs' petition is not as definite and certain as it might be, we do think it fairly charges the Enid Bank & Trust Company solicited plaintiffs to buy stock from it; that they agreed to buy certain shares at a stipulated price; that a few days later the deal was consummated; the certificate of stock was delivered and the purchase price was paid; that incorporated in and as a part of the agreement to sell was an agreement to repurchase; that the entire agreement covering both the sale and repurchase was reduced to writing, and that agreement was incorporated in and made a part of the petition by exhibit, and that a demand for repurchase with tender of stock was made in accordance with the agreement, which was refused.

The evidence fully sustains these allegations. That a banking institution under the laws of Oklahoma can only carry on as a part of its regular business, such business as the state laws and its charter authorize, and that it can only act through its board of directors and its officers and others duly authorized, are propositions which need no citation of authority or argument to sustain.

Generally speaking, if contracts outside the banking laws and bank charter are made, they can be avoided on the affirmative action of the bank on the ground that they are ultra vires, or if made by an officer or agent without authority they can likewise be avoided, but to this general rule there are certain exceptions. If a bank is carrying on business not authorized by law and its charter, the state, through its Bank Commissioner, may step in and stop the practice, but this case does not present any of these questions. The bank in this case is not seeking to avoid a sale of stock belonging to it by the president who had no authority to make the sale. That much of the agreement has been executed, and apparently the bank is content to stand on the agreement in so far as it has been performed, retaining the benefits received, but seeking to avoid all obligations in connection with the transaction.

Section 9133, O. S. 1931, enumerates the powers granted to a state bank. The express authority granted to purchase and sell stocks and bonds does not extend to securities issued by private corporations. The prohibition against engaging in any type of business except as permitted in this section is found in the following provisions:

"And provided further that no bank except those that have complied with or that may be organized under the law of this state relating to trust companies shall engage in any business other than is authorized by this article."

From this last provision of the statutes, it is clear that a state bank which has also complied with the law relating to trust companies may engage in business other than as authorized by section 9133.

The question then would naturally arise, What additional authority does a state bank have by reason by having complied with the law of the state relating to trust companies? The general authority of a trust company under the law in this state to make investments is fixed by section 9206, O. S. 1931, and reads as follows:

"To buy and sell the bonds and warrants of this state and all other kinds of government, state or municipal bonds and all kinds of negotiable and nonnegotiable paper, stocks and other investment securities."

From the above provision of the statute, it thus appears that a state bank which has complied with the law relating to trust companies in Oklahoma could buy and sell the capital stock and other securities of corporations of the character involved in this case.

It is alleged in plaintiffs' petition "that the said O. J. Fleming, as president of the Enid Bank & Trust Company, a banking corporation, in the general course of business of said banking institution and with-

in the scope of said bank and trust company's powers and authority, did, for and on behalf of said bank and trust company, state to Joseph H. Yandell that his bank would sell," etc., and "that in consideration of the statements made by said officer of the Enid Bank & Trust Company, for and on behalf of said banking institution, the said Joseph H. Yandell for himself and as agent for Olive F. Yandell," purchased five shares of 6½ per cent. preferred stock of the Oklahoma Natural Gas Corporation from said bank and paid therefor the sum of $95 per share, and that at the same time and place the bank entered into a written agreement to repurchase the said five shares of stock.

Section 9240, O. S. 1931, makes it a felony for any firm or corporation to use the words "trust" or "trust company" in its name unless it has complied with the law to do a trust company business. The general presumption is that people and corporations in their business deals keep within the law. It certainly would have to be presumed in this case that the Enid Bank & Trust Company had complied with the law relating to trust companies before it used the words "trust company" as a part of its corporate name.

The above provision of the statute taken in connection with the allegations of the petition referred to clearly shows that the Enid Bank & Trust Company had complied with the law relating to trust companies in this state, and was acting under that authority in the sale of the stock in question.

This case is clearly distinguishable from Awotin v. Atlas Exchange National Bank of Chicago, 295 U. S. 209, 55 S. Ct. 674, 79 L. Ed. 1393. The Awotin Case involves facts very similar to the facts in this case. The federal statute involved in this case, as amended in 1927 (44 Stat. 1226, sec. 2 [sec. 12, U. S. C. A. sec. 24]) reads:

"Provided, that the business of buying and selling investment securities shall hereafter be limited to buying and selling without recourse marketable obligations evidencing indebtedness of any person * * * or corporation, in the form of bonds, notes, and/or debentures, commonly known as investment securities."

The Supreme Court in deciding the Awotin Case said: .

"* * * The petitioner, who was chargeable with knowledge of the prohibition of the statute, may not invoke an estoppel to impose a liability which the statute forbids. Texas & Pacific Ry. Co. v. Pottorff, 291 U. S. 245, 260; California Nat. Bank v. Kennedy, 167 U. S. 362; Concord First National Bank v. Hawkins, 174 U. S. 364, 369; First National Bank v. Converse, 200 U. S. 425, 439, 440; Merchants' National Bank v. Wehrmann, 202 U. S. 295, 302. * * *

"The invalidity of the contract was not due to the mere absence of power in the bank to enter into it, in which case restitution, not inequitable to the bank or inimical to the public interest, might be compelled. See Logan County Nat. Bank v. Townsend, supra, 74, 75; Hitchcock v. Galveston, 96 U. S. 341, 350. The contract is invalid because it is within the broad sweep of the statute which by mandatory language sets up definite limits upon the liability which may be incurred by a national bank, in the course of its business of dealing in securities, by confining the business to buying and selling 'without recourse.' The phrase is broader than a mere limitation upon the power to contract, although embracing that limitation. It is a prohibition of liability, whatever its form, by way of 'recourse' growing out of the transaction of the business. See Bank of United States v. Owens, 2 Pet. 527, 537; Brown v. Tarkington, 3 Wall, 377, 381; Thomas v. City of Richmond, 12 Wall. 349, 356; Continental Wall Paper Co. v. Voight & Sons Co., 212 U. S. 227, 262. * * *"

The Supreme Court in the above opinion recognizes that relief may be had in a proper case where the invalidity of the contract is due to mere absence of power in the bank to make the contract, but in that case the court held the contract not only exceeded the authority of the bank to make it, but was in direct violation of an express prohibition of the statute.

In the case at bar the contract made is not in violation of any express prohibition of the statute, but is within the authority of a bank having trust powers to make. We therefore conclude that the contract in question in this case was not made in violation of the law and is not ultra vires the bank.

The next question presented is whether the Enid Bank & Trust Company is bound by the contract, no specific authority for its execution by the president being shown.

An analysis of the evidence, we think, shows a ratification of the president's act. The agreement quoted above just covers one contract and one deal. While it covers two transactions (the agreement to sell and agreement to purchase), it is in legal contemplation one deal and one contract. The bank cannot perform a part of the contract, keep the benefits derived therefrom, and then disaffirm the balance of the contract on the ground of ultra vires, or want

of authority in an official to make it, and thereby escape further liability.

We think a clear prima facie case of ownership of the stock by the bank and sale thereof by the bank is made by the written agreement, for the agreement recites, "The Enid Bank & Trust Company * * * have sold to Joseph H. Yandell and Olive F. Yandell, Five Shares of Stock, * * * at * * * $95.00 per share." There is considerable argument in the brief of plaintiffs in error that the evidence and pleadings of plaintiffs are not sufficient for the reason that neither shows whether the bank was acting as owner or the agent at the sale. The general forms of all bills of sale are in substance that "————— (naming the party) does grant, bargain, sell," etc., and unless otherwise stated the person signing the bill of sale is taken to be selling as owner. The same general form and substance will be found in the form of general warranty deed prescribed by our statutes for the sale of real estate by the owner thereof to others. Both the pleadings and evidence are amply sufficient, we think, to show the bank was the owner and sold as such.

Another contention is that the evidence is not sufficient to show the bank received and kept the consideration paid for the stock. Referring to the agreement again, it recites that the stock was sold by the bank for $95 per share. The additional proof on this point is that the Yandells were customers and depositors in this bank. They delivered to the president of the bank (who it should be remembered delivered them the stock) a check on their account in that bank payable in blank for the purchase price of the stock. This check was cashed and charged to their account. Checks made payable in blank, or to cash, or to bearer, are all payable to bearer, and in such case a blank may be filled in by the holder. Therefore, when the check in question was delivered to the president of the bank, who had possession of the stock and who sold and delivered the stock to the plaintiffs, he had the right to cash the check and pass the proceeds to the credit of the bank. The officers of the bank, including the president, are agents of the bank. They have authority to act in accordance with the general usage, practice and course of their business, and when thus acting they bind the bank in favor of third persons who have no knowledge of any narrower limitations of their power. In this case the president made an offer of sale to plaintiffs during banking hours, in the banking rooms of the bank; the transaction was eventually consummated in the same manner, the agreement was written up on official stationery of the bank, and a copy thereof was placed in the files of the bank. With no showing whatever to the contrary, we think the evidence is sufficient to show the president received the consideration for the bank.

It is further insisted that there was no evidence on the question as to what consideration the bank was obligated to pay for the repurchase of the stock if it were held to be so obligated. Defendants in error insist this contention on appeal injects a new issue and a new theory of defense, which was not presented to the court below. While there is some merit to the claim of change of theory, we think the contract in question really in truth and in fact was a contract to redeem the stock at the sale price and was so understood and acted upon by the parties.

While no specific authority for the president's act in executing the contract is shown, we have concluded the evidence is sufficient to show the corporation accepted the benefits of the transaction, and when the bank did this it thereby ratified the act of the president and is bound by the contract.

If the Enid Bank & Trust Company is liable, then judgment properly went against all of the other defendants, since they had assumed the payment of obligations of this character of the Enid Bank & Trust Company.

For the reasons stated, we conclude that the judgment of the trial court is correct, and should be, and is, affirmed.

The Supreme Court asknowledges the aid of Attorneys Wm. R. McGinnis, G. P. Cantrell, and Allan R. Shaw in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. McGinnis and approved by Mr. Cantrell and Mr. Shaw, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and BAYLESS, WELCH, CORN, and GIBSON, JJ., concur.