## BIRDSELL MFG. CO. v. ANDERSON.
### No. 7900.

Circuit Court of Appeals, Sixth Circuit.
June 9, 1939.

Walter R. Arnold, of South Bend, Ind., (John Degnan, and Arnold & Degnan, all of South Bend, Ind., and Eugene R. Attkisson and Attkisson & Attkisson, all of Louisville, Ky., on the brief), for appellant.

Harry Kasfir, of Cincinnati, Ohio, (Frank E. Wood, Robert S. Marx, and Nichols, Wood, Marx & Ginter, all of Cincinnati, Ohio, on the brief), for appellee.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

ALLEN, Circuit Judge.

Appeal from a judgment sustaining a demurrer to appellant's petition on the ground that the facts therein set forth were not sufficient to constitute a cause of action, and dismissing the petition upon failure of appellant to further plead.

The petition in substance alleges that on April 24, 1930, appellant, an Indiana corporation which was engaged in the manufacture of farm wagons at South Bend, Indiana, entered into a contract with the Kentucky Wagon Manufacturing Company, a Kentucky corporation engaged in the manufacture of farm wagons at Louisville, Kentucky. The Wagon Company was owned and controlled by the National Bank of Kentucky. In re Kentucky Wagon Mfg. Co., 6 Cir., 71 F.2d 802. The contract related to certain materials, equipment and supplies owned by appellant. The stated reason for entering into the contract was that appellant desired to suspend the manufacture and sale of farm wagons and to have the Wagon Company continue making "Birdsell model wagons" and to furnish materials and parts for repairs for Birdsell farm wagons then in the hands of dealers and customers. Appellant therefore agreed to ship to the Wagon Company in Louisville all materials, parts and supplies which it then had on hand for the manufacture of Birdsell farm wagons, and to deliver to the Wagon Company all blue prints, specifications, working drawings, patterns, catalogues, literature and every other thing necessary to enable the Wagon Company to manufacture Birdsell model farm wagons and to furnish dealers and customers all repairs and parts.

The Wagon Company was to furnish appellant storage room in its plant at a rental of one dollar a year. All the materials, parts and supplies were to remain "the absolute property" of the appellant during the entire period of the contract. The Wagon Company was to have the privilege of buying materials and supplies at agreed prices. The contract was to expire on June 1, 1932, and it was agreed that if any materials and supplies were on hand at the expiration of the agreement that had not been used or paid for by the Wagon Company, the Wagon Company would purchase and pay for them at the inventory prices, subject to the consent of appellant, which agreed either to accept payment at inventory prices or to take up

and remove from the Wagon Company's premises all of the remainder of the supplies.

Pursuant to the contract the materials were delivered to the Wagon Company, which used quantities thereof, paying therefor according to inventory value an aggregate sum of $15,234.35. In November, 1930, the National Bank of Kentucky was taken into the custody of the Comptroller of Currency of the United States as an insolvent bank, and on January 12, 1931, the Wagon Company was adjudicated an involuntary bankrupt. Upon June 1, 1932, the date set for the expiration of the contract, there was left in the possession of the trustee for the Wagon Company materials and supplies valued at $46,330.90. The trustee of the Wagon Company continued to use and pay for these supplies until September 27, 1932, at which time, under the direction of the United States District Court, he repudiated the contract and refused to pay for the remaining items. Appellant sold the stock on July 1, 1933, realizing net, minus the expenses of sale which are not questioned here, the sum of $4,849.16. The petition prayed for recovery of $41,481.74 damages, being the difference between the inventory price of the goods remaining in the hands of the Wagon Company at the time of the repudiation and the net proceeds from the sale of the goods.

Since the case arises upon demurrer, the sole legal question is whether appellee, under the facts alleged in the petition, is liable under this contract.

The appellant claims that the Wagon Company breached the contract in that it failed to purchase and pay for the materials that were on hand at the expiration of the agreement on June 1, 1932, and that since the Wagon Company is the agent and instrumentality of the bank (In re Kentucky Wagon Mfg. Co., supra), the breach of the Wagon Company renders the bank liable. It avoids the consequences of this contention, which necessarily considers the contract of the Wagon Company as being the contract of the bank and hence ultra vires, by claiming (1) that the contract had been performed on both sides at the time of the breach, and (2) that the bank had received benefits under the contract and hence was estopped on both grounds to deny its contractual power.

It is the general rule as to ultra vires contracts that when such a contract has been fully executed (Cf. Union Trust Co. of New York v. Illinois Midland Ry. Co., 117 U.S. 434, 467, 468, 6 S.Ct. 809, 29 L.Ed. 963), the courts will refuse to disturb it. Where a corporation has received and retained benefits arising from such an ultra vires contract (Cf. Jones v. New York Guaranty & Indemnity Co., 101 U.S. 622, 25 L.Ed. 1030), it is estopped to deny the validity of the contract. However, in the later decisions covering ultra vires transactions of national banks, such contracts are in general held to be unenforceable. Where a statute prohibits liability, the bank may plead its want of authority even where it has received and retained a benefit. Texas & Pacific Ry. Co. v. Pottorff, 5 Cir., 63 F.2d 1, 4, affirmed 291 U.S. 245, 54 S.Ct. 416, 78 L.Ed. 777; Awotin v. Atlas Exchange Nat. Bank, 295 U.S. 209, 55 S.Ct. 674, 79 L.Ed. 1393. Moreover, even though the statute does not expressly prohibit the transaction, and where the prohibition is implied only from the failure to grant the power, the bank may plead its want of authority. First Nat. Bank v. Converse, 200 U.S. 425, 439, 26 S. Ct. 306, 50 L.Ed. 537; Concord First Nat. Bank v. Hawkins, 174 U.S. 364, 367, 19 S. Ct. 739, 43 L.Ed. 1007.

The statute does not confer upon national banks the power to conduct a manufacturing business (Title 12, § 24, U.S.C., 12 U.S.C.A. § 24). While a national bank may purchase and conduct a business for the purpose of recouping losses (Cockrill v. Abeles, 8 Cir., 86 F. 505), the continued conduct of the business as disclosed in the management of the affairs of the Wagon Company by the bank, is ultra vires. Atherton v. Anderson, 6 Cir., 86 F.2d 518, 526, reversed upon other grounds, 302 U.S. 643, 58 S.Ct. 53, 82 L.Ed. 500; Id., 6 Cir., 99 F. 2d 883, 887.

Under this record there is no merit in either of appellant's contentions because (1) the contract was not fully performed, and (2) the bank received no benefit from the transactions involved herein. The decisions relied upon by appellant are not applicable.

This contract was never fully performed. The materials and supplies were not sold to the Wagon Company. They were simply consigned to it under the contract, with an option to use and pay for them. The Wagon Company was obliged to purchase the materials unused after the termination of the contract if and when the

appellant should consent. Appellant's argument that the contract was performed is based largely upon the premise that title passed to the Wagon Company upon termination of the contract, but this proposition is plainly untenable. The contract expressly reserved title in the appellant during the period to June 1, 1932. Nothing in the agreement provided that at the termination of the contract title should pass to the Wagon Company, and the retention by appellant of the right to repossess the goods shows that the parties intended that title should pass only upon payment. Appellant had the title when the contract terminated, and nothing occurred to divest it of the title. Payment was not made by the Wagon Company, and the goods were sold by appellant to others.

Also since possession of the goods was in fact taken by appellant, which had at no time transferred title thereto, no benefit was conferred upon the bank. No proceeds from the sale were received and none of the materials not paid for were used by either the bank or the Wagon Company. The District Court correctly ruled that as the petition relied upon an ultra vires contract which the allegations showed was not performed and from which the bank received no benefit, it failed to state a cause of action.

The judgment is affirmed.