THEODORE R. CONVERSE, Receiver, Appellant, *vs.* EMERSON, TALCOTT & Co., Appellee.

*Opinion filed December 22, 1909.*

1. CORPORATIONS—*corporation has no greater powers than its charter confers.* A corporation can exercise no other powers than those which are expressly conferred upon it by its charter or which must be necessarily implied therefrom.

2. SAME—*Illinois manufacturing corporation cannot subscribe for stock in another company.* A corporation organized in Illinois to manufacture and sell certain articles has no power to participate in the organization of another corporation and subscribe for its stock, and such acts are *ultra vires* and void, and do not render the corporation liable, at the suit of the receiver of the new corporation, for unpaid balance upon the stock.

3. SAME—*if corporation's act is beyond its power it cannot be ratified.* If the act of a corporation in subscribing for the stock of another corporation is beyond its power the transaction is void, and the corporation is not estopped to raise the defense of *ultra vires* when it is sued for the unpaid balance upon the stock, even though it may have received the benefits of the transaction.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Winnebago county; the Hon. A. H. FROST, Judge, presiding.

F. E. CARPENTER, and E. M. ST. JOHN, (J. H. CHANDLER, and DAVIS, KELLOGG & SEVERANCE, of counsel,) for appellant.

E. P. LATHROP, and ROBERT LATHROP, for appellee.

Mr. JUSTICE COOKE delivered the opinion of the court:

This was an action of assumpsit brought in the circuit court of Winnebago county by Theodore R. Converse, as receiver of the Minnesota Thresher Manufacturing Company, appellant, against Emerson, Talcott & Co., appellee, to recover the amount of two assessments, aggregating $1900, levied by the district court of Washington county, in the State of Minnesota, against appellee, as the owner and holder of thirty-eight shares of the capital stock of the said Minnesota Thresher Manufacturing Company. By agreement a trial was had before the circuit court without a jury upon a stipulation of facts, and resulted in a finding in favor of appellee and a judgment against appellant for costs of suit. Appellant prosecuted an appeal to the Appellate Court for the Second District, where the judgment of the circuit court was affirmed. He has prosecuted a further appeal to this court, and here seeks a reversal of the judgments of the circuit court and of the Appellate Court.

Appellee was in January, 1883, and has ever since been, a corporation, created and existing under the general incorporation laws of the State of Illinois. Its object, as set forth in its charter, is "the prosecution and carrying on the business of the manufacture and sale of agricultural machinery, tools and other articles." In January, 1883, appellee sold and delivered to the Northwestern Manufacturing and Car Company, (hereinafter referred to as the car company,) a corporation organized under the laws of the State of Minnesota and engaged in that State in manufacturing cars and threshing machinery, certain agricultural implements, in part payment for which the car company gave appellee its promissory note for $1904.14, dated January 26, 1883, and due November 1, 1884. During the

year 1884 the car company became insolvent and was placed
in the hands of a receiver.   In November, 1884, the Min-
nesota Thresher Manufacturing Company, a corporation,
(hereinafter referred to as the thresher company,) was or-
ganized under the laws of the State of Minnesota by cer-
tain creditors and stockholders of the car company.   The
objects for which the thresher company was formed, as
set forth in its charter, were "the purchase of the capital
stock, evidences of indebtedness issued by and the assets
of the Northwestern Manufacturing and Car Company, a
corporation existing under the laws of the State of Min-
nesota, or any portion of said capital stock, evidences of
indebtedness or assets, and the manufacture and sale of
steam engines, and all kinds of farm implements, machin-
ery of all kinds, and the manufacture and sale of all ar-
ticles, implements and machinery of which wood and iron,
or either of them, form the principal component parts, and
the manufacture of materials therein used."   The capital
stock of the thresher company was $7,000,000, divided in-
to 140,000 shares of the par value of $50 each, of which
80,000 shares were classed as preferred stock and the re-
maining 60,000 shares as common stock.   At the time this
suit was brought 27,967 shares of the preferred stock and
42,594 shares of the common stock had been issued and
were outstanding.   Under the plan of organization of the
thresher company the creditors of the car company had the
right to subscribe for and accept preferred stock of the
thresher company and to pay for the same by the assign-
ment of their respective claims against the car company.
Appellee, as a creditor of the car company, participated in
the organization of the thresher company, subscribed for
thirty-eight shares of the preferred stock on or about
April 29, 1885, assigned and turned over to the thresher
company its claim for $1904.14 against the car company,
and received, in addition to the thirty-eight shares of stock,
scrip of the thresher company in the sum of $26.73, the

scrip representing the amount of appellee's claim, with accrued interest, over and above the par value of the thirty-eight shares of stock. Appellee has never received any dividends or profits upon this stock. At the time of the organization of the thresher company the constitution of the State of Minnesota provided that "each stockholder in any corporation (excepting those organized for the purpose of carrying on any kind of manufacturing business) shall be liable to the amount of stock held or owned by him," which provision is still in force, and has been held by the Supreme Court of Minnesota to render the stockholders of the thresher company liable to the amount of stock held or owned by them, respectively. On August 16, 1901, a judgment having been rendered against the thresher company for $2936.07 by the district court of Ramsey county, Minnesota, and execution having been issued thereon and returned no property found, and the company then being insolvent and without any assets other than the constitutional liability of its stockholders above set forth, the district court of Washington county, Minnesota, upon the application of the judgment creditor, appointed Theodore R. Converse receiver of all the property, assets, rights and interests of the thresher company, with authority, among other things, to sue for, collect and compromise any stockholder's liability that might exist under the constitution and laws of the State of Minnesota. Claims against the thresher company aggregating $443,752.17 were allowed in that proceeding. Thereafter, in pursuance of the laws of the State of Minnesota and upon petition filed by the receiver, the district court of Washington county, Minnesota, entered an order levying an assessment of $18 upon each share of the capital stock of the thresher company, and directing the receiver to collect such assessments and to bring suit therefor, if necessary, against any stockholder neglecting or refusing to pay the same. Afterwards another assessment of $32 upon each share of the capital

stock was made by said district court and similar directions were given to the receiver. Appellee refused to pay either of these assessments upon the thirty-eight shares of stock subscribed and held by it, and the receiver brought this suit in the circuit court of Winnebago county to recover the same. Appellee resisted this action on the ground that its act in acquiring the stock of the thresher company under the conditions above set forth was not within its charter powers and was therefore *ultra vires*. Upon the trial appellant submitted to the court written propositions to be held as law in the decision of the case, announcing that under the facts stipulated in the case the action of the appellee in acquiring the stock was not *ultra vires*, and further, that appellee, having received and held this stock for more than twenty years, is estopped from interposing the defense of *ultra vires*. The action of the circuit court in refusing to hold these propositions as law in the decision of the case is the only ground urged for reversal.

It appears from the authorities cited by counsel on both sides, that a number of corporations in various States, including national and State banks, joined with the appellee company in organizing the thresher company; also, that by suits instituted by the appellant here, and based upon the same state of facts, the question up for decision here has been raised in the Federal courts.

The case of *First Nat. Bank* v. *Converse*, 200 U. S. 425, was a suit instituted by the appellant here in the Circuit Court of the United States for the Northern District of Illinois, the declaration setting up practically the same state of facts contained in the stipulation herein. The defendant there, the First National Bank of Ottawa, Illinois, demurred to the declaration, which demurrer was overruled. It elected to stand by its demurrer, and the case was taken to the United States Supreme Court for review by writ of error. In passing upon the question as to whether the act of the First National Bank in subscribing

for stock in the thresher company was *ultra vires,* the United States Supreme Court in its opinion says: "As no authority, express or implied, has ever been conferred by the statutes of the United States upon a national bank to engage in or promote a purely speculative business or ad- venture, accepting the view of the articles of association by which the bank was denied the benefit of the exemp- tion accorded by the constitution of Minnesota, it follows that the bank had no power to engage in such business, by taking stock or otherwise. The power of a national bank to engage in the character of business which the articles of association of the thresher company manifested, as de- fined by the Supreme Court of Minnesota, cannot be in- ferred to have been possessed by the bank as an incident of securing a present loan of money or as a means of protecting itself from loss upon a pre-existing indebtedness. To concede that a national bank has ordinarily the right to take stock in another corporation as collateral for a present loan or as a security for a pre-existing debt does not imply that because a national bank has lent money to a corporation it may become an organizer and take stock in a new and speculative venture,—in other words, do the very thing which the previous decisions of this court have held cannot be done." In passing upon the right of the bank, despite its subscription to the capital stock, to plead its want of authority as a defense to the claim of the re- ceiver, the United States Supreme Court in that case quoted from the case of *De la Vergne Refrigerating Machine Co.* v. *German Savings Inst.* 175 U. S. 40, as follows: "The doctrine that no recovery can be had upon the contract is based upon the theory that it is for the interests of the public that corporations should not transcend the limits of their charters; that the property of stockholders should not be put to the risk of engagements which they did not undertake; that if the contract be prohibited by statute, every one dealing with the corporation is bound to take

notice of the restrictions in its charter, whether such charter be a private act or a general law under which corporations of this class are organized."

As above stated, the facts involved in the case of *First Nat. Bank* v. *Converse, supra,* were identical with those in the case at bar. Appellant strongly contends, however, that there is a distinction between that case and the case at bar, in that there the defendant was a national bank while in the case at bar the defendant was a private corporation, and that the rule there applied to a national bank is not applicable to a manufacturing corporation organized under the statutes of Illinois. That contention is completely answered by the recent decision of the United States Circuit Court of Appeals for the seventh circuit in the case of *Converse* v. *Gardner Governor Co.* 174 Fed. Rep. 30. In that case the appellant here brought suit against the Gardner Governor Company, an Illinois manufacturing corporation, in the Circuit Court of the United States for the Southern District of Illinois, and set up in the declaration the same state of facts agreed upon in this case. The defendant company demurred to the declaration and the demurrer was sustained. The receiver elected to stand by his declaration and sued out his writ of error from the United States Circuit Court of Appeals. The appellant here, who was the plaintiff in error in that case, attempted to make the same distinction as to the case of *First Nat. Bank* v. *Converse, supra,* which is sought to be made here. In passing upon that question, in its opinion the United States Circuit Court of Appeals says: "It was held by the court below that the decision in *First Nat. Bank* v. *Converse, supra,* is decisive of the question raised here by demurrer. The plaintiff in error argues that the rule there applied to a national bank is not applicable to a manufacturing corporation organized under a State statute. It is also contended that a national bank is a public and the defendant in error a private corporation. These conten-

242—40

tions are without merit. The Supreme Court applied the rule to a manufacturing corporation organized under the law of New York in the case of *De la Vergne Co.* v. *German Savings Inst.* 175 U. S. 40, cited in *First Nat. Bank* v. *Converse, supra.* It follows that the subscription of defendant in error was *ultra vires* and unenforceable."

A corporation is but the creature of the statute, and it can exercise no greater powers than those which are expressly conferred upon it by its charter or which must be necessarily implied from its charter. The charter of the appellee company empowered it only to engage in the business of manufacturing and selling certain articles. It had no authority, either express or implied, to participate in the organization of other corporations, either for speculative or for manufacturing purposes. It is earnestly contended on the part of the appellant that the stock in question was taken by the appellee company simply to secure an indebtedness, and that it was clearly within the powers of appellee to take and hold the stock for this purpose, and that by so taking and holding it the appellee company assumed all the liabilities of a legitimate holder of the stock. Without passing upon the question whether, in any event, the appellee would have the right to take the stock of another corporation to secure the payment of an existing indebtedness, we do not agree with the view of appellant. Under the facts as agreed upon in this case it is clear that the appellee company did not receive this stock in payment of a debt. The thresher company was not indebted to appellee. The debt referred to was owing to appellee by a different corporation. The appellee became one of the organizers of the thresher company for the purposes for which that company was incorporated and was one of the original subscribers for its stock. Its act in so doing was *ultra vires* its charter and void, and this suit cannot be maintained thereon. *People* v. *Pullman Car Co.* 175 Ill. 125; *People*

v. *Chicago Gas Trust Co.* 130 id. 268; *National Home Building Ass.* v. *Home Savings Bank,* 181 id. 35.

Appellant further contends that appellee is now estopped from setting up the doctrine of *ultra vires* for the reason that for a period of twenty-three years it held the stock and participated in the management of the thresher company and received all the benefits accruing to a stockholder. It appears that no dividends have ever been declared on this stock. If any material benefit has been received by appellee on account of its supposed ownership of this stock the appellant herein has an adequate remedy. In the case of *National Home Building Ass.* v. *Home Savings Bank, supra,* it is held that a contract beyond the power of a corporation to make is void, and the fact that the corporation has received the benefits thereof or the other parties have acted thereunder does not estop the corporation from raising the defense of *ultra vires.* It could well be said here as it was there: "In this case the transaction was beyond the corporate powers and *ultra vires* in the strict and legitimate sense, and against public policy. It could not be ratified or become valid by acquiescence, since there was no power to make it." When the contract is beyond the power conferred upon it by existing laws, neither the corporation nor the other party to the contract can be estopped by assenting to it or by acting upon it to show that it was prohibited by those laws. (*Steele* v. *Fraternal Tribunes,* 215 Ill. 190.) The act of the appellee company in participating in the organization of the thresher company and in subscribing for its capital stock was clearly *ultra vires* its charter and void.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*