## American Surety Company of New York, Appellant, v. Hillsboro Building & Improvement Association, Appellee.

1. HOMESTEAD LOAN ASSOCIATIONS—*section 5b of act construed.* A bond of an officer of a loan association so far as its provisions are not authorized by this section of the statute, is absolutely void, and the association is not estopped from attacking such provisions as *ultra vires.*

2. HOMESTEAD LOAN ASSOCIATIONS—*when bond ultra vires.* A provision of a bond given by a surety company to protect an association

from defalcations made by one of its officers insofar as it provides that in a certain contingency money paid to make good the defalcation of such an officer should be in part refunded to the surety company, is *ultra vires* and void.

Assumpsit.' Appeal from the Circuit Court of Montgomery county; the Hon. J. C. McBRIDE, Judge, presiding. Heard in this court at the May term, 1911. Affirmed. Opinion filed October 14, 1911. *Certiorari* denied by Supreme Court (making opinion final).

D. R. KINDER, for appellant; NORCROSS & NORCROSS, of counsel.

MILLER & McDAVID, for appellee.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an action in assumpsit. The cause was tried by the court without a jury, upon the common counts, demurrer having been sustained to the special counts. The issues were found in favor of the defendant, and judgment rendered against the plaintiff in bar of action and for costs.

The evidence shows that James E. Colvin, who was secretary of the defendant association, as principal, and the plaintiff as surety, executed to the defendant a bond and continuance certificate, by the terms of which the plaintiff bound itself to pay such pecuniary loss, not exceeding the sum of $7,000, as the defendant should have sustained of its funds or other personal property stolen or embezzled by the said Colvin during the performance of his duties as secretary of the defendant association, during the terms commencing July 19, 1905, and ending July 19, 1907. The bond contained the following provision: "That in the event of any such loss by the employer and of any claim being made against the surety, the surety shall be entitled to share with the employer *pro rata* on the basis which the surety's loss bears to the employer's total loss, in any recovery

by the employer, upon or by reason of such loss, from any source other than the surety, excepting any recovery upon or from other suretyship of such employer.''

Upon the death of Colvin, June 1, 1907, investigation of his accounts was made, and on October 11, 1907, it was discovered that he was an embezzler to the extent of $29,228.60. Notice of the shortage was given the plaintiff October 16, 1907, and on October twenty-third following, it paid to the defendant the full amount of the bond, to-wit: $7,000. The investigation was continued, and finally completed in November, 1907, and it was learned that the total amount of the defalcation was $34,689.03. The defendant then notified the plaintiff of the total amount of the shortage, and further, that it would file its claim against the estate of Colvin for the sum of $27,689.03, being the difference between the total shortage and the amount paid to it by the plaintiff. It did so, and the claim was allowed by the county court, as of the sixth class, and paid. The plaintiff also filed a claim against said estate, for the amount paid by it to the defendant, with interest, which was allowed, in the sum of $7,021.52, as of the seventh class. The assets of the estate were insufficient to pay any part of the plaintiff's claim.

By the special counts of the declaration, to which demurrer was sustained, the foregoing facts are recited, in substance. It is further alleged therein that the plaintiff, by reason of the execution of said bond by the plaintiff and its acceptance by the defendant, and the demanding and receiving the sum of $7,000 from the plaintiff, became liable to pay to the plaintiff the *pro rata* aforesaid of the amount which it received from the estate of Colvin.

It is first urged as ground for reversal, that the court erred in sustaining the demurrer to the special counts. This raises the question as to whether the

agreement between the parties, whereby the defendant agreed to share with the plaintiff *pro rata* on the basis which the loss of the plaintiff sustained to the total loss of the defendant, other than suretyship, was *ultra vires* the defendant, and if *ultra vires,* whether it could receive and retain the benefits of the contract and not comply therewith, and if not, whether it must not restore to the plaintiff that which it received. It is urged that inasmuch as the Statute governing loan associations does not provide the conditions of bonds to be given by officers of such associations, but the same is left to the discretion of the directors thereof, that the directors of the defendant in the present case, therefore, had power to agree with the surety upon any terms and conditions they saw fit.

"It is well settled that the powers of a corporation organized under a legislative charter are only such as the Statute confers, and the enumeration of these powers implies the exclusion of all others. The rule of construction applicable to the statutory provisions is that every power that is not clearly granted, is withheld, and that any ambiguity in the terms of the grants must operate against the corporation and in favor of the public. If the power claimed is withheld it is regarded as a prohibition against the exercise of such a power." Fritze v. Equitable Society, 186 Ill. 183.

"A corporation can exercise no other powers than those which are expressly conferred upon it by its charter, or which may be necessarily implied therefrom. If the corporate act is beyond its power, it cannot be ratified, and it is not estopped to raise the defense of *ultra vires.*" Converse v. Emerson, 242 Ill. 619.

"The doctrine that a corporation cannot avail itself of the defense of ultra vires where a contract has been in good faith performed by the other party, and the corporation has had the full benefit of its performance,

has no application where such contract is immoral or illegal or prohibited by Statute, or where its enforcement would be against public policy.'' Fritze v. Equitable Association, *supra*.

Section 5b of the Loan Associations Act provides that ''Every person appointed or elected to any position requiring the receipt, payment, management or use of money belonging to such association, shall within thirty days after such appointment, become bonded with two or more good and sufficient securities, or with some good and responsible fidelity or insurance company, in such sum as the directors shall require and provide.'' The same section further provides that ''the bond shall be sufficient in amount to protect the association from any loss by reason of malfeasance in office or failure to faithfully perform and discharge the duties of his position.'' By the by-laws of the defendant association the secretary is authorized ''to receive all moneys paid to the association, and to pay the same over to the treasurer.''

''A contract of a corporation which is *ultra vires* in the proper sense of that term—that is to say, outside of its creation, as defined by the laws of its organiza-tion, and therefore beyond the powers conferred upon it by the legislature,—is not only voidable, but wholly void and of no legal effect. The objection to the contract here is, not merely that the corporation ought not to have made it, but that it could not lawfully have made it. The contract could not be ratified by either party because it could not have been authorized by either. No performance by the parties could give the unlawful contract validity or become the foundation of any right of action upon it. When a corporation acts within the general scope of the powers conferred upon it by the legislature, it, as well as all persons contracting with it, will be estopped to deny that it has complied with the legal formalities which are prerequisite to its

existence or to its action because such prerequisites might, in fact, have been complied with. But when the contract is beyond the powers conferred upon it by existing laws, neither the corporation nor the other party to the contract can be estopped, by assenting to it or by acting upon it, to show that it was prohibited by those laws. The powers delegated by the State to corporations are matters of public law, of which no one can plead ignorance. A party dealing with a corporation having limited and delegated powers is chargeable with notice of those powers and their limitations and cannot plead his ignorance of their existence.'' Steele v. Fraternal Tribunes, 215 Ill. 190.

We conclude from an examination of the Statute and the authorities above cited, that the Statute expressly provides the terms of bonds to be given by officers of loan associations; that the bond now under consideration, so far as it complies with the Statute, is valid and enforceable, but that the provision referred to not being authorized and being contrary to the spirit of the Statute, is prohibited thereby, and wholly void, not voidable. We are further of the opinion that although there has been full performance on the part of the plaintiff, the defendant, by assenting to the provisions, or acting upon or receiving the benefit of the bond, is not estopped to insist that such provision is void. It seems clear that the board of directors had no legal right or power to agree with the surety company that money paid to make good the defalcation of an officer, should be in part refunded to the surety company. The special counts in question, therefore, did not state a good cause of action, and the demurrer thereto was properly sustained.

We are not prepared to hold that a recovery could be had under the common counts upon the theory that the defendant holds money which in equity and good conscience belongs to the plaintiff. While the defendant

has received the full benefit of the bond in question, it has in fact received no more than the plaintiff, by its obligation, in consideration of the premium paid, agreed that it should receive. The plaintiff agreed, for a good consideration, to pay any loss that the defendant might sustain by reason of the embezzlement of Colvin. The defendant has been fully reimbursed, and no more. To hold that the plaintiff is relieved from the full performance of its obligation because of the provision in question, would be to defeat the very purpose of the bond, and impose upon the defendant a duty and obligation unwarranted by either law, equity, sound reason or public policy.

The foregoing views we think dispose of the vital questions in the case. The judgment of the circuit court is affirmed.

*Affirmed.*