IRVINE v. CHICAGO, WILMINGTON & VERMILLION COAL CO.

(Circuit Court of Appeals, Seventh Circuit.   November 21, 1912.)

No. 1,767.

CORPORATIONS (§ 377*)—POWERS—PURCHASE OF STOCK IN OTHER CORPORATIONS—ULTRA VIRES.

Defendant, a corporation with charter powers limited to dealing in coal and to owning and using only such property as was necessary in that business, sold certain coal cars under a conditional sale contract to the receiver of a railroad in exchange for lease warrants, which, as they matured, were exchanged for duly authorized receivers' certificates, which were a prior lien on the railroad company's property. The property having been sold by the receiver to a reorganized company, defendant agreed to take stock in the new company, and, in return therefor, surrendered its receivers' certificates and its legal title and right to possession of the cars. *Held,* that the receipt of such stock of the new railroad company was not a mere means of collecting a desperate debt, but was a purchase of stock in another corporation, and ultra vires.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1531–1534; Dec. Dig. § 377.*]

In Error to the Circuit Court of the United States for the Eastern Division of the Northern District of Illinois; George A. Carpenter, Judge.

Action by Elsworth C. Irvine, receiver of the Columbus, Sandusky & Hocking Railroad Company, and others against the Chicago, Wilmington & Vermillion Coal Company. Judgment for defendant, and plaintiff brings error.   Affirmed.

Plaintiff in error, receiver of the Columbus, Sandusky & Hocking Railroad Company by appointment of the court of common pleas of Franklin county, Ohio, brought this action in the Circuit Court of the United States for the Northern District of Illinois to collect from the defendant, an Illinois corporation, an assessment of 25 per cent. of the par value of capital stock in the railroad company held by the defendant. To the declaration defendant filed a plea that it had no authority to hold stock in the railroad company, and that its act in taking the stock was therefore ultra vires and void. To this plea the plaintiff demurred. On the overruling of the demurrer plaintiff elected to stand, and the court entered judgment in favor of the defendant.

The Ohio statutes provide that the debt of corporations shall be secured by the individual liability of the stockholder "over and above the stock owned by him, and any amount unpaid thereon, to a further sum equal in amount to such stock," authorize a creditor, seeking to charge the stockholders, to file his complaint in any common pleas court to enforce such liability and to give notice by publication to nonresident stockholders, and empower the court to direct the receiver to prosecute in his own name actions "in other jurisdictions to collect the amount found due from any stockholder."

Though the declaration is challenged by defendant, it may be assumed that the declaration states facts sufficient to make a prima facie case under the Ohio statutes, inasmuch as the plea particularly sets forth the facts on which the question of ultra vires is predicated.

These facts are: That defendant is chartered by Illinois to engage only in the coal business; that in 1886, having on hand 268 coal cars which it did not need in its business, it leased the cars to one Pickard, receiver of the Columbus & Eastern Railroad Company under appointment of an Ohio court; that, under the contract, Pickard executed to defendant 48 lease warrants payable monthly; that the agreement provided that, upon the payment of all of the lease warrants and a further named sum, defendant should execute a bill of

sale of the coal cars; that the agreement provided that the legal title to the coal cars should remain in defendant until the bill of sale should be duly executed, and contained all of the conditions respecting defendant's right to retake the cars upon default in any payment, and other conditions usually found in equipment leases; that down to the sale of the property of the Columbus & Eastern Railroad Company the receiver had given to defendant, in exchange for lease warrants due up to that time, receiver's certificates which had been duly authorized; that the sale was made to a purchasing committee representing defendants and others; that, under the arrangement to which defendant was a party, the purchasing committee paid for the property of the Columbus & Eastern Railroad Company at judicial sale with various property and rights put into the hands of the purchasing committee for that purpose; that defendant and other parties to the arrangement agreed to take stock in a new company to be organized under the name of the Columbus & Eastern Railway Company; that defendant received certain bonds of the new company and 105 shares of the stock of the new company; that defendant through the purchasing committee satisfied its subscription for bonds and stock in the new company by turning in its receiver's certificates and its legal title and right of possession of the 268 coal cars; that by consolidations and other corporate changes defendant's stock in the Columbus & Eastern Railway Company was exchanged for stock in the Columbus, Sandusky & Hocking Railroad Company, of which plaintiff is the receiver. The question arises on the validity of defendant's acquirement of stock in the Columbus & Eastern Railway Company.

John H. S. Lee and Harrison Musgrave, both of Chicago, Ill., for plaintiff in error.

George C. Mastin and John J. Sherlock, both of Chicago, Ill. (Frank Crozier, of Chicago, Ill., of counsel), for defendant in error.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

BAKER, Circuit Judge (after stating the facts as above). Between the action of a corporation, with powers limited to dealing in coal and to owning and using only such property as is necessary in that business, in accepting property in the form of existing stock in a railroad corporation as a means of realizing something upon a desperate debt by selling the stock, and its action in being one of the organizers of a railroad corporation, in subscribing for stock which is yet to be brought into existence, and in paying par value on its subscription (for so must the subscription be paid) in money or property taken from the assets of its coal business, there is a marked difference. First National Bank v. Converse, 200 U. S. 425, 26 Sup. Ct. 306, 50 L. Ed. 537; Converse v. Gardner Governor Co., 174 Fed. 30, 98 C. C. A. 16; Converse v. Emerson & Co., 242 Ill. 619, 90 N. E. 269. Particularly is the difference emphasized if, in the one case, the corporation accepts existing stock as property, to the holding of which no further liability can attach, and, in the other, not only embarks a part of its capital in a hazard of new fortune which its charter does not authorize, but also risks a further part of its capital in a liability which, to the extent thereof, is like a partnership undertaking with its fellow subscribers to the new enterprise.

To the latter class the instant case belongs. Defendant had no claim of debt against the new railway company. Its claim was against Pickard, receiver of another company, for past-due rentals, evidenced by receiver's certificates; and, further, defendant had the legal title

and immediate right of possession of its 268 coal cars. Instead of collecting the receiver's certificates, which were payable ahead of all bond and other liens and all stock interests, and taking possession of its cars for use or sale, defendant subscribed for stock in a new railway company, payable at par in money or money's worth, paid its subscription in cars and receiver's certificates, and further undertook with its fellow organizers to provide, if necessary, additional capital in money to a like amount. This we believe to have been ultra vires.

In this aspect of the case it is unnecessary to consider how far one corporation may go in taking stock in another corporation by way of compounding a debt.

The judgment is affirmed.