CENTRAL LIFE SECURITIES CO. et al. v. SMITH et al.

(Circuit Court of Appeals, Seventh Circuit. June 14, 1916.)

No. 2104.

1. JUDGMENT ⬤⮫91—CONSENT DECREES—EFFECT.

Upon a bill filed in Maine, the domicile of the principal corporate defendant, a consent decree for the appointment of a receiver was entered upon such defendant's answer. Subsequently an ancillary bill was filed in the federal court for the Northern district of Illinois and on principles of comity a similar decree was entered. *Held,* that such defendant could not, having consented to the appointment of the receiver, attack either decree.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 150; Dec. Dig. ⬤⮫91.]

2. JUDGMENT ⬤⮫91—CONSENT DECREE—RIGHT TO ATTACK.

The bill filed in the Maine court set up grounds other than fraud, which under the Maine laws were sufficient justification for the winding up of the principal corporate defendant and the appointment of a receiver. Such allegations were admitted by the answer, but the order, appointing receivers to wind up the affairs of such defendant, declared that the decree was entered without prejudice to the determination of any of the issues presented by the bill as amended, and without prejudice to the claims and assertions of any purchaser of stock as to rights existing, or that might exist, by reason of fraud or illegality in the organization of the corporation or of the sale of its stock, and without prejudice to the determination of the relative rights and demands of all persons or corporations, whether as creditors or stockholders. *Held,* that as the decree might be sustained without reference to the charges of fraud contained in the original bill, the reservation did not entitle the principal defendant to attack the consent decree on the theory that the original bill was subsequently amended so that the allegations originally appearing were disputed and disproven by those of the amended bill.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 150; Dec. Dig. ⬤⮫91.]

3. CORPORATIONS ⬤⮫170—STOCK—ISSUANCE—CONSIDERATION.

Where a corporation which was without assets exchanged its stock for that of a second corporation, there was no consideration to uphold the exchange, and the first corporation is not entitled, on distribution of assets of the second, to share as a stockholder.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 624–632; Dec. Dig. ⬤⮫170.]

4. CORPORATIONS ⬤⮫377(2)—AUTHORITY OF—PURCHASE OF STOCK OF OTHER COMPANIES.

Rev. St. Me. c. 47, § 6, authorizes the formation of corporations to carry on any lawful business, excepting corporations for banking, insurance, etc. Section 51 provides that any corporation organized under the chapter may purchase, own, sell, assign, transfer, or dispose of shares of the capital stock of any other corporation of that state or other states. *Held,* that the permission was restricted to acquisition of the stock of corporations carrying on those businesses which a corporation organized under

⬤⮫For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

chapter 47 might carry on, and so a corporation thus organized could not acquire the stock of a corporation organized to do an insurance business.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1532; Dec. Dig. ☞377(2).]

5. CORPORATIONS ☞377(2)—STOCK OF OTHER COMPANIES—RIGHT TO ACQUIRE.
   Where the statutes of the state of its creation do not authorize a corporation to acquire the stock of other corporations, such power is clearly restricted, and any acquisition is improper.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1532; Dec. Dig. ☞377(2).]

6. CORPORATIONS ☞377(2)—POWERS OF CORPORATIONS—LOCAL LAWS.
   A Maine corporation, organized under Rev. St. Me. c. 47, § 6, authorizing the formation of corporations to carry on any lawful business, is not entitled, by virtue of its charter, to acquire the stock of an Illinois corporation, where the acquisition of such stock was illegal under the Illinois laws, as the Illinois laws would govern the validity of the transaction.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1532; Dec. Dig. ☞377(2).]

7. CORPORATIONS ☞642(1)—"DOING BUSINESS WITHIN" STATE—WHAT CONSTITUTES.
   A foreign corporation, in so far as it holds the stock of a local corporation, is doing business within the state of the local corporation's domicil.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2520, 2521; Dec. Dig. ☞642(1).

For other definitions, see Words and Phrases, First and Second Series, Doing Business.]

8. CORPORATIONS ☞80(12)—STOCK SUBSCRIPTIONS—REPUDIATION.
   Where the promoters of corporations organized in Maine and Arizona intended by means thereof to acquire the stock of an Illinois life insurance corporation, the Maine corporation to hold such stock, subscribers to the preferred stock of the Maine corporation may, on discovering the nature of the scheme, repudiate their subscriptions and recover back the subscription price, the project being illegal, or, in case the funds of such corporation are insufficient to satisfy their demands, share pro rata in the assets.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 264; Dec. Dig. ☞80(12).]

Appeal from the District Court of the United States for the Northern District of Illinois.

Suit by William E. Smith and others against the Central Life Securities Company and others. From the decree, defendants appeal. Affirmed.

Appellees sought a money judgment against, and a receiver for, the Central Life Securities Company, a Maine corporation, and also sought to wind up its affairs. Application was first made to the Supreme Judicial Court of the state of Maine against the appellant Central Life Securities Company, where temporary receivers were appointed. Upon an amended bill and upon the answer of said company and upon its consent the court entered a decree appointing receivers and directing them to wind up the affairs of said company. Complainants also filed in this jurisdiction an ancillary bill similar to the one filed in the Maine court, and it appearing that due comity required the entry of a similar decree in this jurisdiction, a somewhat similar order was entered.

The receivers appointed reduced the assets to cash, and their reports have been approved. The chief controversy on this appeal arises over the distribution of the balance.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The contentions worthy of special consideration arise out of the claims of the Central Agency Company, Western Agency Company, Atlantic Agency Company, Eastern Agency Company, and Thomas Rhodus for participation in this balance.

The court ordered a reference, and full and complete findings and conclusions were made by the master. To these findings and conclusions appellants filed exceptions, which were considered by the court in a careful opinion, and a decree entered March 8, 1913, followed. These findings and conclusions are too lengthy to be here set forth in full. The findings of the master as corrected by the decree are well supported by the evidence.

The capital stock of the Central Life Securities Company was of the par value of $2,500,000, one-half being preferred stock and one-half common stock. No distinction existed between common and preferred stock excepting over the right to dividends. While its charter gave it authority to pursue many lines of business the chiefly advertised business of the Central Life Securities Company was to assist in promoting the business of the Republic Life Insurance Company, an Illinois corporation. The five agency companies, also appellants herein, were organized under the laws of Arizona for the purpose of acting as general agents for placing life insurance business, and doing such other business as their respective charters and the laws of Arizona permitted. Each agency company was capitalized at $1,000,000, divided into $800,000, common stock and $200,000 preferred stock, excepting one which had $100,000 of preferred stock and the balance common stock.

Another corporation was organized by the same parties, known as the Mercantile Securities Company, and from the sale of its preferred stock it was proposed to purchase the stock of a bank. Another corporation, known as the Bankers' Consolidated Corporation, was expected to own the stock in a chain of country banks. Both of these corporations were to hold some of the stock in the aforementioned five agency companies. The amount realized from the sale of the preferred stock of the Central Life Securities Company was $887,249.94, which preferred stock sold at a premium.

The common stock of the Central Life Securities Company was, through the American Trading Company also controlled by the same parties, transferred to the said five agency companies, and $1,250,000 par value of the latter named companies was turned over to the Central Life Securities Company. No other consideration is apparent for the transfer of the common stock of the last-named company. The sale of the stock and the conduct of the business of all of these companies organized as a part of the scheme was at all times in the hands of and under the control of Rhodus Bros.

In addition to the aforesaid companies these same Rhodus Bros., by means of their trading companies and some of the aforesaid companies, promoted and managed the business of the following companies: Nevada & Eastern Gold Mining Company, Boise King Placers Company, Mina Grande Mining Company, Moose Creek Gold Mining Company, Mines Development Company, National Rheostat Company, Merced Copper Company, Federal Mercantile Agency Securities Company, Mercantile Securities Company, the Finance Company of America, the American Trading Company, the Independence Zinc Mining Company and several others.

A policy of exchanging stock, one for the other, was pursued. The chief business of these companies was to sell stock. Enormous sums were paid in commissions and for expenses. Frequently the cost of selling the stock exceeded the amount realized from such sale.

The Republic Life Insurance Company was an Illinois Corporation, the object of which was to conduct a life insurance business. A large sum of money of the Central Life Securities Company was paid to said Republic Life Insurance Company for the preferred stock of the latter company. The Insurance Company wrote life insurance to the amount of about $200,000, of which about 25 per cent. was upon the lives of the Rhoduses and the agents of the various interlocking companies. The principal activity of said company consisted in getting the names of so-called representative men willing to take insurance in said company but with an understanding that certain special privileges followed. It appeared conclusively that the balance in the hands of the receivers

of the Central Life Securities Company, available for distribution, was not sufficient to pay in full the preferred stockholders.

The complainants proceeded upon the theory that the sale of preferred stock to them was fraudulent, and asked that the moneys paid in by them be returned from the assets in the hands of the receivers, and if a sufficient sum be not realized in this manner, that they have judgment for the balance against said company. The court fixed a time in which all claimants might present their claims. Nearly all of the holders of preferred stock filed their claims for the amounts paid by them for said stock. The agency companies also filed their claims for participation in said fund, basing their claim upon their holding the said common stock. The appellant Thomas Rhodus asked for an allowance of his claim for moneys alleged to have been paid for preferred stock. Although the Central Life Securities Company consented to the appointment of receivers to wind up its affairs, it now seeks by this appeal to attack the decree appointing the receivers, and denies all the claims of fraud set up in the complainants' bill.

By the decree appealed from, the preferred stockholders of the Central Life Securities Company, who seasonably filed their claims, were permitted to share pro rata in the balance in the hands of the receivers. The claim of the appellant Thomas Rhodus was disallowed because the court found that he paid nothing for his said preferred stock. The claims of the agency companies, all similar in character were entirely disallowed. A further statement of the facts appears in the discussion.

Samuel Shaw Parks, of Chicago, Ill., for appellants.

Charles R. Holden, of Chicago, Ill., for appellees.

Before EVANS, Circuit Judge, and ANDERSON and GEIGER, District Judges.

EVANS, Circuit Judge (after stating the facts as above). The appellant Thomas Rhodus complains because the master disallowed his claim for moneys alleged to have been paid for preferred stock of the Central Life Securities Company. Whether any money was so paid by the appellant Thomas Rhodus for preferred stock was purely a matter of fact. The report of the master in this respect was confirmed by the judge, and we are convinced that the evidence justifies the conclusion that Thomas Rhodus paid nothing for the preferred stock held by him. He is therefore not entitled as a holder of said preferred stock to participate in the funds in the hands of the receivers.

[1] The Central Life Securities Company attacks the order made in the Supreme Judicial Court of the state of Maine, and also made in these proceedings, wherein receivers were appointed to wind up the affairs of said appellant, contending that the bill originally filed in the Maine court was subsequently amended so that the allegations originally appearing were disputed and disproven by the allegations appearing in the amended bill. Appellant contends that these facts clearly establish a plan to wreck said company, and such conduct constituted a fraud upon the court. In other words, it is claimed a temporary receiver was appointed upon a bill proven false by the allegations in the amended bill.

Without inquiring in detail into the difference between the original bill and the amended bill, it is sufficient to say that the decree appointing the receivers in these proceedings, was entered upon the consent of the said Central Life Securities Company. The decree

appointing the receiver in the Maine court was upon the answer of the said Central Life Securities Company, and without objection from the duly authorized representatives of said company. We are therefore constrained to hold that the said appellant is in no position to attack the validity of either decree.

[2] It appears that the order, appointing the receivers to wind up the affairs of the company, contained the following provisions:

"It is further ordered and decreed that this decree shall be, and it is hereby, entered without prejudice to the determination of any of the issues presented by the bill of complaint herein, as amended and supplemented and without prejudice to the claims and assertions of any purchaser of stock as to rights existing, or that may exist, by reason of any fraud or illegality that may be hereafter found or adjudged to have existed in the organization of said corporation, or the sale of its stock; and without prejudice to the determination of the relative rights and demands of any and all persons or corporations whether as creditors or as stockholders, etc."

The appellant contends that this reservation conclusively establishes its right to contest the sufficiency of the proof to support the allegations in the bill for the appointment of a receiver. We think otherwise. The decree appointing the receivers was upon consent of said appellant. Other grounds than fraud, recognized by the statutes of Maine as sufficient justification for the winding up of a corporation, clearly appear in complainants' bill, and are admitted in the answer. See chapter 85, Laws of 1905. The decree appointing the receivers can be sustained without any reference to, or consideration of, the allegations of fraud and misrepresentation contained in the original bill. The reservation above quoted merely preserves the right of claimants to litigate the question of fraud so far as that question became relevant to the determination of the issue of priority of claims when final distribution was ordered. Clearly no other effect was intended, and none can be given to the reservation in this decree.

[3] The claims of the agency companies are all of similar character. Each filed its claim with the receivers pursuant to the order of the court, directing all claimants to present their claims within a designated time. Each of said agency companies claimed a right to participate in said fund because of the ownership of common stock of the Central Life Securities Company of the par value of $250,000. Together the five agency companies owned all of the common stock of said company.

The precise question presented is whether the holders of the common stock shall be permitted to share pro rata with the holders of the preferred stock of said company.

The holders of preferred stock predicate their claim upon a disaffirmance of the contract by which such stock was issued. Acting upon the theory that the scheme of incorporation and the plan of the promoters was fraudulent, it is claimed that the corporate entity is not even that of a de facto corporation. The holders of preferred stock, therefore, make claim to the fund on hand which they alone produced, and ask it to be apportioned in accordance with the amount actually paid into said fund rather than on the basis of the par value of the preferred stock so held. All holders of preferred stock who

filed claims consented to the entry of the decree, directing distribution upon this basis. The preferred stockholders further contend that the holders of common stock paid nothing therefor, and on this theory are not entitled to participate in the balance now in the hands of the receiver. The court correctly denied the holders of the common stock all right to participate in the funds of the defunct company. The agency companies paid nothing for the common stock of the Central Life Securities Company. True, there was an interchange of common stock, but there was nothing back of the stock of the agency companies when they transferred a portion of their common stock for all of the common stock of the Central Life Securities Company. Under all of the evidence in this case we conclude there was a total failure of consideration for the issuance of the common stock of the Central Life Securities Company to the agency companies.

[4] The preferred stock of the Central Life Securities Company was all illegally issued. An actual fraud on the corporation laws of Maine and Illinois was committed. The charter issued to the agency companies by the state of Arizona was not authorized by the corporation laws of said state.

The Central Life Securities Company was organized under chapter 47 of the Revised Statutes of Maine. Section 6 of said chapter 47 provides that:

"Three or more persons may associate themselves together by written articles of agreement, for the purpose of forming a corporation to carry on any lawful business, * * * and excepting corporations for banking, insurance, the construction and operation of railroads or aiding in the construction thereof, and the business of savings banks, trust companies," etc.

While section 51 of chapter 47 of the Revised Statutes of Maine provides that:

"Any corporation organized under this chapter * * * may purchase, hold, sell, assign, transfer * * * or otherwise dispose of the shares of the capital stock * * * created by any other corporation or corporations of this or any other state"

—we conclude that the appellant Central Life Securities Company was not authorized to purchase stock in a corporation organized to conduct an insurance business, much less, as in this case, to purchase all of, or the controlling interest in, an insurance company. We conclude that section 51 of said chapter 47 authorized the purchase of stock in companies that followed any line of business authorized by said chapter 47, but did not authorize the purchase of stock in companies that transacted a business which was not permitted by said chapter 47. Franklin Co. v. L. S. Bank, 68 Me. 43-47, 28 Am. Rep. 9; 1 Cook on Corporations, § 236. While the Central Life Securities Company was authorized to conduct various kinds of business, its chief business, as advertised and as actually conducted, was to secure control of the Republic Life Insurance Company, and thereby indirectly engage in the life insurance business.

[5] All the agency companies were organized under the laws of Arizona. An examination of the statutes of this state fails to disclose any express authority for a corporation organized under its

laws to hold or vote stock of other corporations. With the statutes of the state silent on this subject the power of a corporation to hold stock of another corporation is clearly restricted. First National Bank v. Converse, 200 U. S. 425, 26 Sup. Ct. 306, 50 L. Ed. 537; People v. Chicago Trust Co., 130 Ill. 268, 22 N. E. 798, 8 L. R. A. 497, 17 Am. St. Rep. 319; People v. Union Gas Co., 254 Ill. 359, 409, 98 N. E. 768, Ann. Cas. 1916B, 201; 7 Ruling Case Law, § 528; Irvine v. Chicago, Wilmington & Vermillion Coal Co., 200 Fed. 953, 119 C. C. A. 333.

[6] The laws of the state of Illinois likewise do not permit, except for a very limited purpose not present in this case, the holding of stock by one corporation in another. Converse v. Emerson Co., 242 Ill. 619, 90 N. E. 269; Converse v. Gardner Co., 174 Fed. 30, 98 C. C. A. 16. In the present case the Maine corporation, not only bought stock in an Illinois corporation, but it practically owned the entire stock of said Illinois corporation. This being unlawful in Illinois, the purpose was not a lawful purpose in the state of Maine. It is only for the purpose of carrying on a lawful business that a corporation in the state of Maine may be organized under chapter 47.

[7] The Central Life Securities Company in holding the stock of the Republic Life Insurance Company was doing business in Illinois. Col. Trust Co. v. M. B. Works, 172 Fed. 313, 97 C. C. A. 144; Dittman v. Dist. Co. of Am., 64 N. J. Eq. 537, 54 Atl. 576; Martin v. Ohio Stove Co., 78 Ill. App. 105.

[8] The purpose and plan of the promoters was clear. They sought to do indirectly what they could not do directly. The entire scheme was illegal.

It affirmatively appears that the holders of the preferred stock, whose claims were allowed in this court, were not active participants in this illegal scheme. It further appears that when the true facts were disclosed they acted promptly in repudiating the scheme.

Where the illegal scheme is thus promptly repudiated by the stockholders, they may recover the moneys by them paid to the company, and if the assets are insufficient to pay them in full, they are permitted to share pro rata in the fund on hand. Pullman's Palace Car Co. v. Central Transportation Co., 171 U. S. 138, 18 Sup. Ct. 808, 43 L. Ed. 108; Central Transportation Co. v. Pullman's Palace Car Co., 139 U. S. 24, 60, 11 Sup. Ct. 478, 35 L. Ed. 55.

The decree is therefore affirmed.